## MARSH v. McPHERSON.

1. The recital in the contract (*infra*, p. 711), that the vendors "hereby deliver said machines at the places named in the list" to the vendee, passes to. him the title and right of possession, but does not prove a delivery of actual possession.

2. If the machines were not delivered at the stipulated time and places, or were not then in a proper condition, proof that they were subsequently delivered, or that the vendee, after accepting them, permitted the vendors to make the requisite repairs and additions thereto, is admissible to reduce his damages for a breach of the contract.

3. In case of a total failure by the vendors to perform the contract, the vendee is entitled to. recover the amount wherewith he, at the time of the breach, could have purchased machines of equal value ; if those delivered were defective, the measure of his damages is the actual cost of supplying the deficiency.

ERROR to the Circuit Court. of the United States for the District of Nebraska.

The case is stated in the.opinion of the court.

*Mr. Jefferson H. Broady* for the. plaintiffs in error.

*Mr. John L. Webster* for the defendant in error.

.MR. JUSTICE MATTHEWS delivered the opinion of the court.

This action was brought Jan. 15, 1878, by John McPherson, against James S. Marsh and Elisha C. Marsh, to .recover damages for the breach of a contract under seal for the sale of certain real and personal property. On Oct. 16, 1877, a written agreement was entered into, by which he, in consideration of their covenants, agreed to sell and convey to them certain described real estate in Nebraska, and, in addition thereto, one-half the stock. of goods in a store belonging to him, on a

parcel of the real estate. They covenanted on their part to pay for the real estate as follows: For one parcel, $18,190.37, in combined reapers and mowers and self-rakers, known as the Valley Chief, to be taken, those designated as No. 1 at $175 each, and No. 2 at $170 each, to be delivered, eighty-six machines of No. 1, and twenty of No. 2, at certain named points in different parts of the State and in Kansas, "all the said machines to be delivered in good condition, and free of all incumbrances, of taxes, and of charges for freight, each machine to have two smooth sickles and one sickle-edge sickle." In the agreement, the freight on each machine from the manufactory at Lewisburg, Penn., was estimated at $25, and in all cases when it fell below that sum the difference was to be accounted for and paid. The store property was to be paid for in cash and notes, and the remainder of the real estate at $3,600, in machines of another description at $175 each, " to be delivered in good condition, free of incumbrances," as before in respect to the others, at certain other named places, being eleven machines at Beatrice, Neb., and the remainder of this lot on board of cars at the factory at Lewisburg, consigned to him or to his order.

At the time of the execution of this agreement, the machines, it is alleged by the plaintiff in his petition, were in the possession of the agents of the defendants at the various points; that they were in bad condition, and subject to incumbrances and charges; that the defendants failed and refused to deliver them, although he had fully performed his covenants, by conveying the real estate and delivering the goods; and that the machines, in the condition required by the contract, were worth the agreed value of $21,775. To recover this amount, with an additional sum for an ascertained difference of freight, the suit was brought in the State court. By reason of the citizenship of the parties, it was, on the petition of the defendants, removed for trial into the Circuit Court.

The defendants, in their answer, admit the execution of the agreement set out in the petition, but allege that it was fully executed, fulfilled, and superseded by a subsequent agreement in writing between the parties, indorsed on it, and dated Nov. 5, 1877, in the words following, to wit: —

"BROWNVILLE, NEBRASKA, November 5th, 1877.

"The above contract is this day executed by the said parties thereto as follows: The within-named real estate is conveyed by said first party (McPherson) to said second parties (Marsh and Marsh); also one-half of said stock of goods at an invoice in the sum of four thousand and two hundred and forty-three and 10-100 dollars, making price of the half, four thousand two hundred and forty-three and 10-100 ($4,243.10) dollars, is delivered by McPherson to said parties, Marsh and Marsh.

"The said second parties, Marsh and Marsh, hereby acknowledge payment of all said machines named in the list within named, aggregating eighty-six number ones, twenty number twos, and hereby deliver all thereof to said first party at the places named in said within list (except there is two instead of one at Donnebrag, and three instead of four at Wahoo, which change is consented to by the parties) free and clear of all liens, charges, or taxes, up to and including taxes for the year 1878, as per within contract. Said second parties also hereby deliver to said first party eleven of said machines within named, called Marsh number four, as provided for within and on the within-named terms therefor, at Beatrice. On this, eleven machines, number four, there is two hundred and seventy-five dollars freight in favor of said second parties, to whom said first party shall account therefor as hereinafter stated.

The balance of $259.63 on the said list of number ones and number twos, and the said eleven number fours, amounting to $1,925, is applied on the purchase price of said lands in Sonora Island, leaving balance of $1,415.37, for which said second parties shall deliver, as provided for within, eight of said machines number four on board the cars in Pennsylvania, at place within named, leaving still a balance on said purchase price of island real estate of $15.37 in favor of said first party, to whom the second parties shall account. As soon as the amount due said first party on freights of said number ones and twos are ascertained, the same, with the said $275 due second parties, and said $15.37 due said first party, shall be settled and adjusted by the parties. Said eight number fours to be delivered within thirty days after notice to second parties. Said second parties hereby warrant that said eighty-six number ones and twenty number twos and eleven number fours are now at the places above named in condition for delivery as above and within provided for, and that said eight number fours shall be delivered

as above stated, and shall stand good to said first party for any breaches or failures of such warranty and promise.

"On said store goods one thousand dollars is paid to said first party, the receipt of which is hereby acknowledged, and the balance shall be paid according to the within contract.

"JOHN MCPHERSON.

"JAMES S. MARSH.

"E. C. MARSH."

On the contract is the following indorsement by the plaintiff: —

"Received of said second parties, Marsh and Marsh, in full payment and settlement of said balance due for said store goods, after said payment of one thousand dollars, the following described notes of this date, made by James S. Marsh, to my order, to wit, one for $1,056.44, one for $915.72, one for $685.47, and one for $585.47, in all four several promissory notes for said amounts, all due December 1, 1877, with interest at ten per cent per annum after maturity.

"November 7, 1877.

(Signed)          "JOHN MCPHERSON.

"Witness: WM. H. HOOVER."

The defendants also allege performance of the contract, and aver that the said transactions between the plaintiff and them were neither sales of his lands and goods nor of their machines, "but were barters of the property of one in exchange for the property of the others, in which the prices fixed were largely in excess of cash prices, so much so that neither would have bought the property of the other for cash at such prices, and that the naming of the prices in the transaction was nothing more than a matter of convenience in executing the exchange." They further aver as to the eight Marsh No. 4 reapers to be delivered on board cars at Lewisburg, Penn., three had been delivered, and that as to the remainder, they have been ready and willing to do so, on the order of the plaintiff, but that he has neglected to do so, but that they hold the same for him.

The answer also contains the following : —

"Defendants admit that after the making of said agreement in November, 1877, defendants told plaintiff that they (the

defendants) would visit each of the points named in said writing where said machines then were, and at which places they were delivered as stated in said writing, and if any agents were not settled with, or any liens or charges were claimed against any of said machines, would make settlement with their said agents then and theretofore having charge of said agricultural machines, and would pay off and discharge all unpaid claims and liens of any and every kind and sort upon each and all of said machines, and put in good repair each and all of the said machines, so as to have the same conform to the conditions of said agreement and warranty in writing, but deny that they ever so stated until after said writing of November, 1877, or that they told plaintiff that they would do so at once, but aver that they stated that they would do so in a reasonable time to have them so repaired and in good condition for the first season and time for selling reapers and mowers; which season, defendants aver, was the latter part of the spring of 1878, continuing from thence through the summer of 1878, and aver that said promise was to so repair and fit up said reapers and mowers ready for the harvest of small grains in the year 1878, and for the sales for such harvest, which time commenced about May, 1878, and continued during such harvest; all of which was agreed to between the parties hereto as satisfactory, as making good the warranty of defendants in said agreement dated Nov. 5, 1877, all of which said promises these defendants have fully performed and complied with, and have previous to said time and previous to the commencement of the reaper and mower trade for 1878, and previous to April, 1878, visited each of the points named in said writing, dated Oct. 6, 1877, where said machines then were, and made settlements with their agents then and there having charge of said agricultural machines, where settlements had not already and heretofore been made with such agents, and paid off and discharged all claims and liens of every kind and sort upon each and all of said machines, and put in good condition and repair each and all of said machines, wherever any such claim or liens were unpaid, and wherever any of said machines were not in good condition or were out of repair, and had all said machines as aforesaid discharged of all claims and

liens, of any and every sort, and in good repair and condition for the 1878 market, in due time for such market and pursuant to such promise."

The cause was tried by jury, and there was a verdict for the plaintiff. Judgment was rendered thereon, to reverse which this writ of error is prosecuted.

There are thirty-three assignments of error, based on exceptions to the rulings of the court upon questions of evidence, and upon instructions to the jury, either given, or asked and refused; but it will not be necessary to refer to them in detail.

The chief issues between the parties, raised by the pleadings and maintained in evidence, were, whether there had been a delivery of possession of the machines by Marsh and Marsh to McPherson, and whether there had been a breach of the warranty, that they were in a good condition at the places named, and free from all liens and charges.

Upon the point whether there had in fact been a delivery of actual possession by the defendants to the plaintiff, of all or of any of the machines, there seems to be some confusion. The bill of exceptions, of course, and properly, does not set out all the evidence, but the court, in its general charge, stated to the jury, " that the plaintiff admits that all the machines had been delivered to him." From the context, it would appear that the contract of Nov. 5, 1877, is treated as an admission to that effect, as to all machines that were in fact at the places named, without respect to their condition; based, no doubt, upon the expression contained in the instrument, by which it is declared that said second parties, Marsh and Marsh, hereby acknowledge payment of all said machines, &c., and hereby deliver all thereof to said first party at the places named in said within list, &c., free and clear of all liens, charges, or taxes, &c. The contract undoubtedly had the effect to pass the title to the machines from Marsh and Marsh to McPherson, and the right of possession; but whether the purchaser obtained actual possession could not be conclusively inferred from the contract merely. If the declaration in that instrument of the fact of delivery could have that effect, it would be equally conclusive that they were free of incumbrances, for that is also stated in

the same connection. It might have been that the machines were in the places mentioned in the contract and in the condition required; yet the defendants might have refused to deliver actual possession; if so, they would, of course, be liable in damages.

The bill of exceptions recites that "during the trial, evidence having been admitted tending to prove that many of the machines named in the contracts copied in the pleadings were not in as good condition as called for in the said contracts, and were not supplied with all the pieces specified in the contracts, and that in some instances the whole machine was missing, and what the values of such deficient or impaired machines in the condition in which they then were and the difference in their values, in such condition, and the condition called for by the contract, and also on the part of the defendants that defendants had made repairs on some machines and supplied deficiencies and missing machines since the commencement of this action, and the value thereof," the court, at the request of the plaintiff, gave to the jury the following instruction: —

" The jury is instructed that they are not permitted to take into account or make any allowance or reductions from the damages of the plaintiff for repairs of any kind made upon the machines or supplies furnished for them after Nov. 5, 1877, all such acts on their part being without authority; and the plaintiff is entitled to recover the full measure of his damages as if no such repairs had ever been made."

This charge is clearly erroneous. In the first place, it assumes the fact that the acts referred to, of making repairs and furnishing supplies, were without authority. It cannot be denied that, if authorized, they would have to be considered; and whether authorized or not was, at least, one of the questions of fact involved in the issues to be tried, on which it was the duty of the jury to pass. For the defendants had set up in their answer what they claimed to be an agreement with the plaintiff, by which they were to have until the spring of 1878 in which to make good their warranty as to the condition of the machines. Whether this agreement for an extension of time, not acted on, could be pleaded as a bar to the action for a breach of the contract, is not the question. It was, if proved,

and if repairs were actually made in pursuance of it, certainly good as proof that they were made with the consent and authority of the plaintiff. And as the bill of exceptions recites that evidence was offered to maintain the issues, by both parties, it is not to be assumed that there was none in support of this claim.

But independently of this alleged agreement, it was certainly competent for the defence to show that, after the date of the second contract, the machines were put in the good condition required by it, and were then delivered to and accepted by the plaintiff; for if he accepted the machines after the time when they should have been delivered, or if, after receiving them, he permitted repairs to be made or supplies to be furnished, and accepted the benefit of them, he certainly cannot claim that he has been damaged by a breach of the contract to the same extent as if nothing had been done to make good his loss.

It is a rule of law, without exception so far as we are aware, that any circumstance, otherwise competent in evidence to reduce the damages, may be proven on the trial for that purpose, although it may not have come into existence until after the commencement of the action.

The court, also, at the request of the plaintiff, gave to the jury the following charges:—

10. "The jury is instructed that the plaintiff is entitled to recover for any machines which were not at the places named at the time of the making of the contract of Nov. 5, 1877, the price of said machines as fixed in the contract; and if you find that the defendants failed to deliver any of the machines to be delivered at Lewisburg, Penn., after demand made by plaintiff, the plaintiff is entitled to recover the contract price of such machines." And, also, 11. "On such machines as were delivered to the plaintiff, he is entitled to recover for any defects in quality or condition, and the measure of his damages is the difference between the value of such machines in the condition in which they then were and the contract price."

And refused to give, on the request of the defendants, the following:—

"The jury are instructed that if they find there was any breach of the warranty named in the contract of Nov. 5, 1877,

that the measure of damages for such breach is the difference in the value of such machines as they actually were and as they were warranted to be, less the benefit to the property by what the defendants have done to make good such warranty."

During the trial the defendants offered to prove the market value of such machines in good condition for cash, and the difference between that and the value of the machines in the condition in which they were delivered; but this offer was rejected.

In its general charge, the court stated the rule of damages very clearly and correctly, in the following language: "The extent of the damages in this case will be the difference that it would cost to put the machines in good condition, so as to comply with the contract, and also the value of those that were not then at the time and place stated in the contract." Standing alone, this instruction would have been unexceptionable. But in the rulings noted above, in giving the tenth and eleventh instructions, asked by the plaintiff, and refusing to give that asked by the defendants, and in rejecting the evidence offered on the point, there was substantial error.

The price fixed in the contract, at which the plaintiff agreed to take the machines, whether the transaction is viewed as an exchange of property, at assumed valuations, or as a purchase and sale for money, is not conclusive, between the parties, upon the question of damages, recoverable for a breach. If there had been a total failure on the part of the defendants to comply with the contract, and they had refused to deliver any of the machines specified, the damages to the plaintiff would have been the amount of money with which, at the time of the breach, he could have supplied himself by purchase from others, with the same number of similar articles of equal value. If the market price had in the mean time advanced, the recovery would be for more, or, if it had fallen, it would be for less, than the contract price; the rule to measure the loss, in such cases, being the difference between the contract and the market price. The same rule applies where the breach is partial and not total; and to make good the warranty as to condition, the cost of repairs; and, as to freedom from liens, the cost of removing them, if that be the difference in actual value, between

the article as warranted and the article as delivered, is all that can be properly recovered as damages, unless in exceptional cases of special damage. Whatever that difference, in the actual circumstances of the case, is shown to be, is the true rule and measure of damages. Where the articles delivered are not what the contract calls for, as in the case of defective machines, the measure of the vendee's damages is what it would cost to supply the deficiency, without regard to the contract price. *Benjamin* v. *Hillard*, 23 How. 149, 167.

For these errors, the judgment of the Circuit Court will be reversed, and the cause remanded with instructions to grant a new trial; and it is

*So ordered.*