BROWN, District Judge.
This is an action on the case for breach of contract relating to the sale and delivery of certain second-hand, boilers contained at the time of contract in the defendant’s factory, and by the terms of the contract to be taken out and delivered in defendant’s yard before November 1, 1895. The case was heard upon, oral testimony, a jury trial being waived. Prom the fact that the boilers were in use and bricked in at the defendant’s factory, to be taken out by the defendant at such time prior to November 1, 1895, as the defendant chose, I am of the opinion that the contract was-an executory contract, which did not pass title to the plaintiff, since something was to be done to make delivery possible, and to be done by November 1st, which made time essential, and gave a right to the plaintiff to rescind for failure to perform the agreement within the-stipulated time. The fact that the memorandum of sale states, “Cunningham Iron Co. purchased * * * the thirteen 72" boilers,” etc., does not, in my opinion, render the transfer of title complete, in view of the foregoing facts. Hatch v. Oil Co., 100 U. S., 124; Jones v. U. S., 96 U. S. 24, 28. On October 3, 1895, defendant’s factory was destroyed by fire. There remained eight boilers to-be delivered. Tírese boilers were not damaged, except by loss of doors, flue doors, water gauges, and other appliances. After the fire the plaintiff wrote, requesting the delivery of the remaining - boilers. On October 26th the defendant wrote, “The remaining boilers having been through the fire, we cannot .deliver the same as if they had not been through the fire, and we do not think you can expect it,” and offering to cancel the agreement as to the rest of the boilers, and afterwards wrote inquiring whether the plaintiff would take the boilers in their then condition at the original price. The plaintiff replied, insisting upon performance of the original contract, saying, “We see no occasion to make any additional contract, or change the provisions of the old one;” and subsequently, without waiving its rights, offered, by way of compromise, to take the boilers at the original price, “less the amount of actual damage done, to be ascertained by inspection.” On November 23d the defendant wrote,. “I understood that legally the fire canceled the contract or agreement had between us,” but again offering the boilers at the original price. The proposal not having been accepted, and the plaintiff still insisting on its original rights, the defendant, after notice of its intention to do so, sold the boilers on January 31, 1896, to George B.. Doane for $230 per boiler. On the same day Doane billed the same to Cunningham, the plaintiff’s agent and largest stockholder, and. *880 on the following day was paid $1,900 for the same by Cunningham’s individual check. Some time afterwards the boilers were removed to the yard of the Cunningham Manufacturing Company, where they remained at the time of trial; Cunningham claiming the same as his individual property, and testifying that he purchased the same on his own account, and not for the plaintiff. In view of the fact that the title remained in the Warren Manufacturing Company at the time of the fire, and of the testimony of Cunningham that the boilers “were not damaged a particle,” save in loss of doors and other appliances, which could have been replaced at a comparatively insignificant cost, there was no impossibility of performance resulting from the fire, and the defendant was not relieved thereby from its obligation under the contract. Jones v. U. S., 96 U. S. 24, 29. Failing therefore either to accept the reasonable offer of plaintiff for a compromise by a deduction of the amount of actual damage, or to perform the contract substantially according to its terms, and preventing performance by a resale, the defendant must be held liable in damages for breach of contract. The question of damages being necessarily before the court, the following facts become material: The boilers were sold by the defendant to Doane for $230 each. Doane sold the same to Thomas Cunningham for a price amounting to $237.50 each. Cunningham was the owner of 398 out of 400 shares of the Cunningham Iron Company, and the agent and manager of said company. The company was engaged in repairing and selling boilers as a part of its business. The boilers were brought to the company’s yard, and save for loss of doors, etc., “not damaged a particle,” as Cunningham testified. Upon these facts, 1 find that _ the Cunningham Iron Company had an opportunity, at a trifling' expense, and with slight exertions on its part, to place itself in the same condition as if the contract had been fulfilled. The duty of the plaintiff on the breach of contract is well defined in the case of Warren v. Stoddart, 105 U. S. 224, 229:
“The rale is that where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense, or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damage only as with reasonable endeavors and expenses he could not prevent.”
See, also, Marsh v. McPherson, 105 U. S. 709.
Considering the character of the business of the plaintiff, its facilities for putting the boilers in a condition equal to that called for by the contract at an expense which, upon the evidence, I find not to be in excess of $30 each, for new doors, etc., and considering the willingness of the plaintiff to receive the boilers in their actual condition, I am of the opinion that by the reasonable endeavors and exertions required by the foregoing rule the corporation might have saved itself from all damages except the expense of making good the loss of doors, etc. If Cunningham, who was the agent of the corporation, did not see fit to avail himself of the opportunity to reduce the damages, and preferred to make the purchase in his own name, the corporation became responsible for a failure of its agent to take advantage of the opportunity, and cannot charge the de *881 fendant for large damages based upon evidence uncertain and speculative in character. In the language of the supreme court in Warren v. Stoddart, 105 U. S. 230, “The law required him to take that course by which he could secure himself with the least damage to the defendant.” Applying the rule above quoted from the case of Warren v. Stoddart, and assessing such damages only as with reasonable endeavors and expenses the plaintiff could not prevent, I find for the plaintiff in the sum of $240.