## SOUTH AFRICAN REDUCTION CO. v. PECK.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

No. 837.

1. DAMAGES—BREACH OF CONTRACT—NECESSITY OF CERTAINTY OF PROOF.

Plaintiff corporation, pursuant to a contract, issued to defendant all but $500 of its $1,000,000 of stock, and also gave him its obligation to pay him $65,000 from its first net profits. In consideration thereof defendant assigned to plaintiff all rights in the Transvaal, South Africa, to certain inventions patented by him in the United States relating to a plant for the reduction of ores. He also agreed to construct a plant in the Transvaal embodying such inventions within a specified time, at his own cost and expense. The contract contained no provision as to who should own such plant when constructed. It was not built, and plaintiff never owned any mine, ore, or other property or engaged in any business. *Held,* that, conceding that plaintiff was to own the plant, it could not recover substantial damages for defendant's breach of the contract, in the absence of evidence showing the cost or value of the plant, or that the obligation given therefor was of any value, the profits which plaintiff might have made had the plant been constructed being purely speculative.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

The plaintiff in error, plaintiff below, was incorporated May 28, 1895, with a capital stock not exceeding $1,000,000, in shares of $100 each. On May 31, 1895, it entered into the following contract with Orrin B. Peck and with Charles V. Peck:

"Whereas, Orrin B. Peck, of Chicago, Illinois, is the inventor of certain inventions, improvements, processes, and machinery for the centrifugal concentration of ores, tailings, slimes, and other substances for which letters patent of the United States have been issued; and whereas, said Orrin B. Peck is the owner of the title to said inventions, improvements, processes, and machinery for the territory known as the Transvaal, South Africa, said Orrin B. Peck holding said title for himself and for Charles V. Peck; and whereas, the South African Reduction Company, a corporation organized under the laws of the state of West Virginia, wishes to purchase said inventions, improvements, processes, and machinery, and the right to apply for letters patent therefor, in and for the territory of the Transvaal, South Africa; and whereas, said company is willing to pay therefor to said Orrin B. Peck and Charles V. Peck nine thousand nine hundred and ninty-five (9,995) full paid and nonassessable shares of stock of said company, and also sixty-five thousand dollars ($65,000), as hereinafter set forth: Now, therefore, in consideration of the mutual agreements herein and one dollar ($1) paid by each of the parties hereto to the other, and other valuable considerations moving from each of the parties to the other, receipt of all of which is hereby acknowledged, said Orrin B. Peck and Charles V. Peck, parties of the first part, agree with said South African Reduction Company, party of the second part as follows: (1) Said Orrin B. Peck and Charles V. Peck have sold, assigned, transferred, and set over, and by these presents do sell, assign, transfer, and set over, unto the said South African Reduction Company, all the right, title, and interest which said Orrin B. Peck and Charles

V. Peck have in and to said inventions, improvements, processes, and machinery for, within, and throughout the said territory of the Transvaal, South Africa, which inventions, improvements, processes, and machinery are more fully described in certain letters patent, and applications for letters patent, in the United States, as follows: (Here follows a list of thirty-seven patents.) To have and to hold the same to the said South African Reduction Company, its successors and assigns, for its and their own use and behoof, to the full end of the term for which letters patent may hereafter be issued in said Transvaal, South Africa, as fully and entirely as the same could or would have been held and enjoyed by said Orrin B. Peck and Charles V. Peck had this assignment not been made. (2) Said Orrin B. Peck and Charles V. Peck represent and guarantee jointly and severally that they hold full title for said inventions, improvements, and processes for said territory of the Transvaal, South Africa. (3) Said Orrin B. Peck agrees to construct and complete and put in operation in the Transvaal, South Africa, all at his own expense, within four months from the date hereof, one centrifugal reduction or concentrating plant constructed in accordance with said invention, improvement, processes, and machinery, so far as the same are embodied in the present machine in operation at Eureka Mill, Virginia City, Nevada (with such additional improvements as may be considered advantageous), the said plant to be so put in operation in the Transvaal to be of the capacity of not less than three hundred tons per twenty-four hours. Delays due to fires, accidents, or strikes, or other unavoidable causes, shall extend said four months to that extent. (4) The said South African Reduction Company agrees to deliver to said Orrin B. Peck and Charles V. Peck upon the execution and delivery of this contract nine thousand nine hundred and ninety-five full paid and nonassessable shares of stock of said company, of the par value of one hundred dollars each. (5) Said South African Reduction Company also agrees upon the execution and delivery of this contract to deliver to said Orrin B. Peck an instrument in writing, signed by said company, whereby said company agrees to pay to said Orrin B. Peck or order sixty-five thousand dollars ($65,000), with interest at the rate of six per cent. per annum, said payment, however, to be made only out of the net earnings of said company, and said payment to be made out of the first net earnings of said company. Said company also agrees, at any time that when said instrument in writing is presented to it by any person to whom it has passed by assignment, to issue a new instrument in writing to said assignee, similar in terms to the original instrument issued to said Orrin B. Peck and in lieu thereof. In witness whereof the parties of the first part have signed their names hereto, and the party of the second part has caused its name to be signed hereto by its president, and its seal to be attached by its secretary, this 31st day of May, 1895.

"Orrin B. Peck.
"Charles V. Peck.
"South African Reduction Company,
"By Harry F. Hawkins, President.

"Attest: Chas. P. Bruch, Secy.
"[Seal of Company.]
"Witness: Edward C. Platt, Joseph J. Cardona."

On the same day stock to the amount of 9,995 shares was issued to Orrin B. Peck and Charles V. Peck, and the company delivered its obligation for sixty-five thousand dollars, as follows:

"Jersey City, N. J., May 31, 1895.

"The South African Reduction Company hereby promises to pay to the order of Orrin B. Peck and Charles V. Peck sixty-five thousand dollars ($65,-000), with interest at the rate of six per cent. (6%) per annum, such payment to be made out of the first net profits of this company, and is to be made forthwith in partial payments as fast as such net profits are received. No lien shall be put on this company's property and assets ahead of this debt, but this debt shall constitute a first lien thereon.

"South African Reduction Company.
"By Harry F. Hawkins, President.
"Chas. P. Bruch, Secy. & Treasr."

The action is brought against Orrin B. Peck for nonperformance of the contract for failure to construct or put in operation in the Transvaal the plant described in the contract, although the time limited therefor had then long since expired. The declaration averred with respect to damages for the breach: "By means whereof plaintiff says that it has been deprived of said plant and the value thereof, and of the cost of putting said plant in operation in said territory of the Transvaal in South Africa, and has lost divers gains and profits which would have accrued to it from the construction and operation of said plant in accordance with the provisions of said contract, and has sustained damage amounting in all to the sum of eighty thousand dollars."

The testimony produced by the plaintiff and preserved in the bill of exceptions proves beyond contention that the defendant utterly failed to perform his contract with respect to the construction of and putting in operation the centrifugal reduction or concentrating plant. The only showing upon the question of damages consisted of statements with respect to a conversation prior to the incorporation of the plaintiff, but presumably in anticipation of a projected incorporation, had by the defendant with two witnesses who subsequently became the owners by purchase from the defendant of a large portion of the capital stock of the plaintiff and also of the obligation of the corporation for $65,000. They stated that the defendant said to them that he estimated that it would cost $65,000 to construct, transfer, and set up such a plant in the Transvaal, which estimate one of them pronounced extravagant. This witness testified: "It is difficult to state the entire amount that has been actually lost by reason of Peck's failure to carry out the contract, because if they had started with machinery at that time it would have been a very valuable plant; and so we supposed that the company certainly lost $65,000 and interest, and also lost whatever profits it might have made by the carrying out of the contract; and the witness is satisfied that it would have been a great success if Peck had gone at it as first proposed, and not only would it have been a great success, but they could have sold it for a large sum of money. I cannot estimate what it would have been worth." He also testified that the stock of the plaintiff company is of no value whatever, and that the company has no property and is not doing any business; that the company has been abandoned by reason of Peck's failure to carry out his contract. At the close of the plaintiff's case the defendant declined to present any evidence, but moved the court to find and adjudge that the plaintiff is entitled to nominal damages only, and that a judgment be entered in favor of the plaintiff and for nominal damages. The court sustained the motion, and assessed the plaintiff's damages at one cent; to which ruling the plaintiff excepted, and the judgment thereupon entered for the plaintiff for nominal damages is brought by writ of error to this court for review.

Horace K. Tenney, for plaintiff in error.
Thomas A. Banning, for defendant in error.

Argued before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). It is clear that the plaintiff company was formed to exploit in the Transvaal the Peck inventions. It acquired the right to them within that territory, they being then unpatented there. For them it paid all of its capital stock of $1,000,000, except to the amount of $500. It had no other property. It owned no mine or real estate in South Africa, or ores, tailings, or slimes, the product of mines. There is nothing to indicate an intention or ability to purchase or operate mines, or to use the plant to be set up and put in operation, otherwise than as a demonstration of the value of the inventions in the treatment of ores. The contract

in some respects is a remarkable one. Its omissions, if casual, indicate neglect upon the part of its writer; if designed, they throw a flood of light upon the subsequent sale of the worthless stock and obligation of the company. It is difficult to say if the obligation for $65,000, payable out of the net earnings of the company, was given as part consideration for the inventions, or for the plant which the defendant agreed to construct. The preamble of the contract would imply the former; the latter may be inferred from the fact that the inventions were purchased from Orrin B. and Charles V. Peck, and the stock was to be and was issued to them jointly, while the defendant alone contracted for the construction and putting in operation of the plant. The obligation for $65,000 was to be made payable to and to be delivered to him individually, and the amount corresponds with the estimate of the cost made by the defendant prior to the contract. And yet the obligation was in fact made payable to both the defendant and to Charles V. Peck.

Some curious questions arise upon the face of this contract. Who was to own the plant when constructed? Where in the Transvaal was it to be set up, and who was to determine where? Who was to furnish work for it to do? Who was to operate it, and, if the defendant, how long was it to be operated by him? Any longer than to determine its capacity? Did the contract contemplate that land or a mine was to be purchased that the plant might be operated, and by whom to be purchased, and where was it to be located? If the obligation for $65,000 was for the purchase price of the plant, some of these questions could be solved; if otherwise, the questions remain at large, unsolved upon the face of the contract. In the view we are constrained to take upon the subject of the measure of damages in the light of the evidence, we need not undertake their solution.

Damages are awarded for breach of contract in compensation, as an equivalent in money for actual loss suffered from the breach, "the value in money of what is lost or withheld. The vendee is, if possible, to be placed in the same situation with respect to damages as if the contract had been performed, so far as that can be done by pecuniary compensation." Robinson v. Harman, 1 Exch. 855. Ordinarily the vendee of an article sold and not delivered agreeably to contract, and who has not paid in advance the contract price, has sustained no loss unless the article has risen in value, because he must pay the price, and would therefore gain nothing by its delivery. If he has paid for the article in advance of delivery, the measure of damages may be the price paid, although that is not conclusive (Marsh v. McPherson, 105 U. S. 709, 26 L. Ed. 1139), or the cost of supplying the article if obtainable in the market. With respect of a breach of contract for delivery of articles for special purposes, known to the person or party contracting, compensation may be awarded for such loss as might reasonably be supposed to have been in the contemplation of both parties as the result of nonperformance, if capable of ascertainment. If the article be not procurable in the market, the parties must be presumed to have contracted with reference to the declared purpose for which that article was to have been furnished,

and that purpose should be considered in estimating the damages. Manufacturing Co. v. Gray, 129 N. C. 438, 40 S. E. 178, 57 L. R. A. 193. But in all cases there must be adequate proof of the resulting loss. The loss must be one which springs directly from the nonfulfillment of the contract. It must not rest in conjecture. It must be ascertainable and established by evidence to a reasonable degree of certainty.

Applying these principles to the case in hand, what loss is shown to have been incurred by the plaintiff? The venture was a purely speculative one, the plant to be constructed being manifestly designed to demonstrate the supposed usefulness of the new method for the centrifugal concentration of ores, tailings, etc., with a view to the selling of rights to be patented in South Africa. Assuming, what would seem to be the most favorable construction of the contract for the plaintiff, that the obligation of the company for $65,000 was given to the defendant as the price of the plant, the value of that obligation would be the amount paid in advance for the plant to be constructed, and would seem to be, in the absence of proof of other direct injury, a proper measure of damages. That obligation was payable out of the net earnings of the company; its value rested in speculation; it was contingent and uncertain; and there is no evidence here that it is worth anything. The testimony of the purchaser of it is that it is worth nothing. The value of the machine is not proven. We cannot think that the defendant's estimate of its cost, protested against as extravagant by the interested parties who were to and who did purchase the stock and the obligation, should furnish a criterion of its value. The cost might or might not bear relation to the value of the plant. When transported to and put up in South Africa it might or might not be worth more than old iron. That would be dependent upon many contingencies. It might prove to be valuable if the patents to be obtained should cover desirable inventions, and the mine owners of that country could be induced to believe it; but the cost of the manufacture of the plant and of its transportation and setting up somewhere in the vast territory of the Transvaal, even if we accept the estimate of the defendant, would furnish no proper criterion of the value of the plant at the place of delivery.

The difficulty with the case is the utter absence of testimony proving loss. The plaintiff did not upon default of the defendant furnish itself with such a plant. There is no evidence of the value of that which it is claimed was given for the plant. There is no evidence of loss sustained. The expected profits which were to arise from the sale of the right to the inventions when patents should be issued are purely speculative, uncertain, and no standard can be furnished by which to measure them. In such a case as the present, where the damages resulting are so purely speculative, it is allowable to the parties contracting to liquidate damages in anticipation of the breach. Failing so to do, it is incumbent upon the party complaining of the breach to prove the resulting loss. There being no such proof here, we find no error in the ruling of the court below.

The judgment will be affirmed.