(53 Misc. Rep. 386.)

### RAU v. SEIDENBERG.

(Supreme Court, Special Term, New York County. March, 1907.)

**1. SPECIFIC PERFORMANCE—RIGHT OF ACTION.**
    Where one advances money to purchase mines under an agreement that he shall receive a proportionate share of the capital stock of a corporation to be formed, he may sue for specific performance, where the stock has no known value and his damages are incapable of ascertainment.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 199, 203.]

**2. EVIDENCE—MARKET VALUE.**
    Market value is a price established by public sales of the same property in the way of ordinary business.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 281.]

**3. INJUNCTION—BREACH OF CONTRACT.**
    Where plaintiff advanced money to purchase mines, he to receive a proportionate share of the capital stock of a corporation to be organized, and the whole stock has been issued to defendant, with whom plaintiff made the arrangement, and he is of doubtful responsibility, an injunction will be granted restraining him from disposing of the stock pending the action.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 95.]

Action by Alfred M. Rau against William J. Seidenberg. Preliminary injunction granted.

Hays & Hershfield, for plaintiff.
Wing, Russell & Watterson, for defendant.

LEVENTRITT, J. Prior to December, 1906, the defendant was engaged in promoting an enterprise looking to the acquisition of certain lands in New Mexico said to contain meerschaum deposits. Being in need of funds to finance the undertaking, he on December 7,

1906, sought out the plaintiff, whom he induced to invest the sum of $5,000 upon the understanding that, after purchasing and perfecting title to the lands in question, a corporation would be formed to take over the property and mines acquired, for which capital stock would be issued, and that thereupon the plaintiff would receive for the amount invested by him a proportionate share in the resultant holdings of the defendant in the stock of the corporation in the ratio of $5,000 to the cost to the defendant of such holdings. The property was purchased, and a corporation formed, known as the "Meerschaum Company of America," with a capitalization of $6,000,000, represented by 600,000 shares of stock, of the par value of $10 each, of which 82,575 shares were issued to the defendant. The cost to the defendant of his interest in the enterprise did not exceed $40,000. In response to the plaintiff's demand for his proportion of the 82,575 shares, the defendant tendered 1,000 shares, claiming, as he now contends, that the plaintiff had agreed to buy that number at $5 a share.

Thereupon the plaintiff brought this action in equity for a specific performance of his agreement with the defendant, basing his right to equitable relief upon allegations that the stock of the Meerschaum Company of America has no known or definite value; that his damages would, therefore, be incapable of ascertainment; and that, even if damages could be calculated, the defendant is financially irresponsible. Upon this motion he seeks to enjoin the defendant of disposing of any of his holdings in the Meerschaum Company of America during the pendency of the action. The plaintiff's version of the agreement is supported, and the defendant's version negatived, by the fact that at the time when the agreement was made the mines had not been secured, no corporation had been formed nor plans to that end perfected, and it was not known what the capitalization of the proposed corporation or the par value of its stock would be. Although the defendant alleges that all arrangements were completed by himself and his "associates" prior to December 7, 1906, there is a significant omission to present in support of his statement an affidavit by any other person engaged in the enterprise. The proof preponderates in plaintiff's favor, and upon the facts he should receive equitable protection.

The first contention urged by the defendant is that this is not a proper case for specific performance, because the defendant is able to respond in damages which are capable of computation. Courts of equity will not as a general rule entertain jurisdiction to compel specific performance of an agreement to sell stock, but that rule is limited to cases where compensation in damages furnishes a complete and satisfactory remedy. The defendant urges that the stock has a definite market value of $5 per share, and presents affidavits of a number of persons who have stock which they are willing to sell to the plaintiff or to the public at that price. Bouvier defines market value as a price established by public sales in the way of ordinary business, and in Sloan v. Baird, 162 N. Y. 330, 56 N. E. 753, the Court of Appeals said:

"The market value of property is established when other property of the same kind has been the subject of purchase or sale to so great an extent and in so many instances that the value becomes fixed."

It is conceded that no sales of this stock have been consummated, although a few uncertain offers to purchase have been received. The corporation is but recently formed. The enterprise at best is an experiment, the result of which will be unknown until the mines are developed; and it cannot be seriously maintained that the stock could have a definite market value, irrespective of the failure to establish such value by any sales. But, even if the market value were fixed, or the offers to sell shares to the plaintiff at a price named could be construed as defining value as to him, I am of the opinion that a judgment in damages could not be enforced against the defendant. To be sure, he asserts his financial responsibility; but, in response to a direct attack, supported by facts, upon the truth of his assertion, he presents no proof and leaves the plaintiff's charge practically unchallenged.

As to the right of the plaintiff to maintain this action, I am inclined to the views expressed in Treasurer v. Commercial Mining Co., 23 Cal. 390, where the court say:

"In peculiar conditions of business and mining operations in this state, where numerous mining and other corporations are in existence whose stock is often a fluctuating and uncertain value, * * * where the market value of stocks, if any they have, is often difficult to substantiate by competent evidence, and where the risk of the personal responsibility of individuals and corporations is so great, courts should be liberal in extending the full, adequate, and complete relief afforded by a decree of specific performance."

Here no market value is shown; but, conceding damages to be ascertainable, they would be adjudged in an action at law against a person whose inability to respond is substantiated. The plaintiff has, therefore, established his right to injunctive relief until the merits are determined.

The injunction could also be sustained upon another ground. Even if this were not a case where the facts and probabilities were so clearly resolved in the plaintiff's favor, the last analysis of the facts presents a situation where, upon balancing considerations of relative convenience and inconvenience, it is apparent, not only that a disposition of the defendant's stock during the pendency of the action is likely to result in irreparable injury to the plaintiff, but that the balance of inconvenience preponderates in his favor, and the injunction should be continued. High, Inj. § 13, and cases cited.

The preliminary injunction will be modified, however, so as to cover one-ninth of the stock (82,575 shares) originally issued to the defendant, instead of the entire amount of his holdings. The motion will be granted as indicated, with $10 costs to the plaintiff to abide event.

Ordered accordingly.