## BALTIMORE & O. C. TERMINAL R. CO. v. BECKER MILLING MACH. CO.

(Circuit Court of Appeals, Seventh Circuit. March 12, 1921.)

No. 2847.

1. **Appeal and error ⬅⇒221—Defendant's objections to measure of damages to be considered, though finding of value not questioned.**

In an action against a carrier for the destruction of machines, if the uniform price paid for such machines was not the true measure of plaintiff's loss, defendant's objections to the adoption of such standard must be considered on writ of error, though the court's finding of market value based on such sales must stand, because not properly questioned, or because supported by undisputed evidence.

2. **Carriers ⬅⇒135—Amount paid for manufacture of machines held not measure of recovery for destruction.**

Where a manufacturer of a particular type of machine, being unable to supply the demand, engaged another company to fabricate 200 of the machines furnishing special prints, patterns, tools, etc., and its own mechanical engineer to inspect the materials and workmanship, the amount paid such other company for each machine was not the measure of recovery against a carrier destroying 2 of the machines.

3. **Evidence ⬅⇒20(1)—Overhead expenses to be charged to manufacturing cost held matter of common knowledge.**

The court knows from common knowledge that the expenses of maintaining engineering and experimental departments in factories, as well as

the expense for superintendence and all other proper items of overhead, must be apportioned to product and charged as parts of the manufacturing cost.

**4. Carriers ⬤≈135—Owner of destroyed property held entitled to compensation, but no more.**

A carrier, destroying machines it has contracted to deliver, must compensate the owner for the loss caused by the failure to deliver; but where it was guilty of no intentional wrong, and no special use of the machines was shown, the owner was entitled only to compensation.

**5. Damages ⬤≈40(1)—Profits not rejected as such, but only when ascertainment leads to conjecture.**

In ascertaining damages there is no objection to profits as such, and it is only when an attempt to ascertain profits leads to conjecture and speculation that profits are rejected.

**6. Evidence ⬤≈113(16)—Amount purchasers of machines are willing to pay is evidence of value, though there is no competition.**

Though there is no market place or public exchange in which by competitive offers and bids the market price of a special type of machine can be determined, the amount purchasers are willing to pay is evidence of the sales value in an action against a carrier for their destruction.

**7. Carriers ⬤≈135—Selling cost to be deducted from selling price of destroyed machines in fixing damages.**

Where an owner of a special type of machine, two of which were destroyed by a carrier, sold them through manufacturer's agents, who were either purchasers on their own account for resale at a uniform price, or selling agents on commission, such uniform selling price, without deduction of the selling cost, was not the measure of damages.

**8. Carriers ⬤≈134—Burden on plaintiff, suing carrier, to show loss with the degree of certainty of which case is capable.**

In an action against a carrier for the destruction of machines, the burden was on plaintiff to show its actual loss with that degree of certainty of which the case was capable.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Becker Milling Machine Company against the Baltimore & Ohio Chicago Terminal Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

James M. Sheean, of Chicago, Ill., for plaintiff in error.
Robert J. Cary, of New York City, for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Railroad Company, defendant, admitted its liability for destruction of two milling machines, property of Becker Company, plaintiff, in transit from Chicago to Boston, and the only litigated question was the amount of recovery. Trial was had before the District Court without a jury.

Plaintiff at Boston was manufacturer of a particular type of milling machine devised by it, and it owned the special plans, prints, patterns, dies, jigs, tools, etc., necessary for manufacturing. It also had its selling arrangements through which alone these machines, when new, could be purchased by users.

Users of these machines were manufacturers of various steel products who procured them at the most convenient machinery center from

⬤≈For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

independent firms or corporations that were acting as "manufacturers' agents," and installed them as plant equipment.

Having a larger demand in 1916 to 1918 than it could supply through its own factory, plaintiff engaged Miehle Company of Chicago to fabricate two hundred of these machines. Under this arrangement Miehle Company furnished its factory, the raw materials and the labor, and plaintiff furnished the special prints, patterns, dies, tools, etc., through which alone these machines could be made, and also its own mechanical engineer to inspect materials and workmanship during manufacture in order to see that the machines as finished corresponded to specifications.

[1] Plaintiff was given judgment for $4,010 for each machine. From evidence of demand for the machines and numerous sales by the aforesaid "manufacturers' agents" at that unvarying price, fixed by plaintiff, the court found that such was their "market value." And now plaintiff contends that the judgment is unassailable because such finding of fact was not properly questioned, and because, even if it had been, it is supported by the undisputed evidence. True, the finding of "market value" based on sales as aforesaid must stand; but the ultimate fact for the court to find as the only legal basis of recovery was the amount of money that would make plaintiff whole for the destruction of the machines. And if the uniform price that users were paying to the "manufacturers' agents" for plaintiff's machines was not the true measure of plaintiff's loss, defendant's objections to the adoption of that standard must be considered.

[2-5] Defendant's first insistence is that the recovery should have been limited to $1,850 for each machine, that being the amount plaintiff paid Miehle Company for fabrication. Manifestly the cost of replacement was more, for we know from common knowledge that the expense of maintaining engineering and experimental departments in factories, as well as expense for superintendence and all other proper items of overhead, must be apportioned to product and charged as parts of the manufacturing cost. Defendant engaged to deliver the machines at Boston, and therefore must compensate plaintiff for the loss caused by the failure to deliver. As defendant was not guilty of any intentional wrong, and as no special use of the machines by plaintiff to bring Hadley v. Baxendale, 9 Exch. 341, into the case was shown, plaintiff was entitled only to compensation. And manufacturing cost is not necessarily commensurate with compensation. If, the machines having been delivered, plaintiff would have made a net profit above manufacturing cost, that would have been its good fortune; and if a loss had resulted, plaintiff would have had to bear it. There is no objection to profits as such; it is only when an attempt to ascertain them leads to conjecture and speculation that profits are rejected.

[6] Against adoption of the $4,010 that purchasers had to pay for a Becker machine as the measure of plaintiff's damage, defendant argues that, because there was no market place or public exchange in which by competitive offers and bids the "market price" of these machines could be determined, they had no "market price" from which the court could find their "market value." Thus defendant would ad-

mit liability to the grower of inspected and graded wheat, which is bought and sold in public markets or exchanges, for the amount purchasers were willing to pay, but would deny liability to the maker of a specific type of automobile, which could be purchased only through the maker's selling arrangements, for the amount purchasers were willing to pay. It seems clear to us that in either case the amount purchasers were willing to pay would be evidence of the sales value.

In their discussion of "market price" as evidence of "market value" and of "market value" as measurement of plaintiff's damage the parties have cited numerous cases.[1]

For the purpose of determining whether the "market value" correctly measured plaintiff's loss we note certain additional cases.[2]

Cases cited by the parties have to do with breaches of sales contracts. In controversies of that character the thing destroyed is the sales contract, and the plaintiff, either seller or buyer, is entitled to compensation for the loss occasioned by its destruction. That loss is measured by the distance between the contract price at one end and the market price as evidence of market value at the other; and there is no reason for inquiring what selling costs or what buying costs were incurred in making the original sale and purchase because seller and buyer met and each included all his costs in agreeing upon the price; and similarly if the plaintiff has fixed his loss by a resale or a repurchase (it being immaterial whether he has or not, for the measure of his damage is the same in either event), the costs of resale or repurchase are included in

[1] By plaintiff: Hetland v. Bilstad, 140 Iowa, 411, 118 N. W. 422; Sanford v. Peck, 63 Conn. 486, 27 Atl. 1057; City of Paris v. Baldwin Bros., 169 Ky. 802, 185 S. W. 144; M. K. & T. Ry. Co. v. Crews, 54 Tex. Civ. App. 548, 120 S. W. 1110; Parish & Co. v. Yazoo & M. V. Ry. Co., 103 Miss. 288, 60 South. 322; Fort Worth & D. C. Ry. Co. v. Hapgood (Tex. Civ. App.) 210 S. W. 969; Home Construction Co. v. Church, 14 Ky. Law Rep. 807; Buford & Co. v. McGetchie, 60 Iowa, 298, 14 N. W. 790; Garlington v. Fort Worth & D. C. Ry. Co., 34 Tex. Civ. App. 274, 78 S. W. 368; Schall v. Northland Motor Car Co., 123 Minn. 214, 143 N. W. 357; State v. Meysenburg, 171 Mo. 1, 71 S. W. 229; Carr v. Moore, 41 N. H. 131; Budd v. Van Orden, 33 N. J. Eq. 143.

By defendant: Lovejoy v. Michels, 88 Mich. 15, 49 N. W. 901, 13 L. R. A. 770; Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71; Davis v. Grand Rapids School Furniture Co., 41 W. Va. 717, 24 S. E. 630; Rau v. Seidenberg, 53 Misc. Rep. 386, 104 N. Y. Supp. 798; Carey Lithograph Co. v. Magazine & Book Co., 70 Misc. Rep. 541, 127 N. Y. Supp. 300; Henry v. North Am. Ry. Const. Co., 158 Fed. 79, 85 C. C. A. 409; Marsh v. McPherson, 105 U. S. 709, 26 L. Ed. 1139; McFadden v. Henderson, 128 Ala. 221, 29 South. 640; Theiss v. Weiss, 166 Pa. 9, 31 Atl. 63, 45 Am. St. Rep. 638; Lawrence v. Porter, 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167; Pittsburg Sheet Steel Mfg. Co. v. West Penn Sheet Steel Co., 201 Pa. 150, 50 Atl. 935; Foss v. Heineman, 144 Wis. 146, 128 N. W. 881; Salmon v. Helena Box Co., 147 Fed. 408, 77 C. C. A. 586; Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Morris v. Supplee, 208 Pa. 253, 57 Atl. 566; Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752; Crowley v. Burns Boiler Mfg. Co., 100 Minn. 178, 110 N. W. 969; Wade McHenry Lumber Co. v. Frank Spangler Co., 230 Fed. 418, 144 C. C. A. 560.

[2] Hetzel v. B. & O. R. Co., 169 U. S. 26, 38, 18 Sup. Ct. 255, 42 L. Ed. 648; Prussian Nat. Ins. Co. v. Lawrence, 221 Fed. 931, 137 C. C. A. 501, L. R. A. 1915E, 489, and note; Mechanics' Ins. Co. v. Hoover Distilling Co., 182 Fed. 590, 105 C. C. A. 128, 31 L. R. A. (N. S.) 873; Chicago G. W. Ry. Co. v. Gitchell, 95 Ill. App. 1.

the new price; and neither party to the suit should be permitted to add to or subtract from the difference between contract price and market value an expense that has been satisfied in the new price.

[7, 8] Is a manufacturer whose finished articles are destroyed entitled to recover what purchasers were willing to pay against a defendant who is only liable to make good the manufacturer's actual loss? We had hoped to find an answer in cases against carriers or against insurers; but we have found no case in which the question of the defendant's right to have deducted from the "market value" the manufacturer's selling costs has been explicitly considered. When the property was destroyed where there was no local market, it has been held that, if the property was produced to sell, the plaintiff was entitled to the market value at the nearest fair market, less the costs of transportation to that market; and, if the property was held for use at the place of destruction, the plaintiff was entitled to the market value at the nearest fair market, plus the costs of transportation from that market to the place of use. It may be said that the courts have decided, sub silentio, that no other costs are to be taken into account. And in many cases the question of selling expense might be trivial, as where the deerhunter shoots the calf and the farmer proves that buyers come regularly to his farm and offer a certain price for like calves. If that were true in all cases, the question might be ignored by virtue of the maxim, de minimis. But from the present record the question obtrudes as one of material consequence. Plaintiff's selling arrangements were through "manufacturers' agents." The unavoidable inference from the evidence is that these "manufacturers' agents" were purchasers of plaintiff's machines on their own account for resale at $4,010, or that they were selling agents on commission. And so plaintiff's net receipts would be either its wholesale price or its retail price less commission. On manufactured articles, of which the maker has exclusive control, and the selling price of which runs into the thousands, discounts from list prices or commissions on sales frequently reach or exceed 25 per cent. Even if these "manufacturers' agents" were branch houses of plaintiff, the question would not be materially different. Plaintiff in no event would be entitled to more than compensation for its actual loss; and the burden was on plaintiff to show what that loss was with that degree of certainty of which the case is capable.

This must be so unless defendant is to be treated as though it had made a contract to buy these machines from plaintiff at $4,010 each. But that would be an assumption contrary to fact. What defendant destroyed was machines, not a sales contract; and plaintiff's loss must be determined by looking only to that which was in fact destroyed.

The judgment is reversed and the cause remanded for consentaneous proceedings.