# CHARLESTON.

GRAND RAPIDS SHOW CASE CO. *v.* EARLE ROGERS CO.

(No. 5726)

Submitted January 18, 1927.   Decided January 25, 1927.

1.  SALES—*Buyer May Charge Against Purchase Price Reasonable Cost of Bringing Article to Color of Sample.*

    In case a purchaser desires to retain an article ordered which does not conform exactly to the color of the sample shown him by the seller, and it is practicable to remedy that difference, he may charge against the purchase price the reasonable cost of bringing the article to the color of the sample.   (p. 65).

    (Sales, 35 Cyc. p. 547.)

2.  SAME—*In Absence of Proof of Proper Measure of Damages for Breach of Sale Contract, Jury Should Not be Instructed to Allow Damages; In Absence of Proper Proof of Damages Because Fixtures Did Not Conform to Color of Sample, Purchaser Cannot Recover Therefor.*

    Where no *proper* measure of damages is proven, the jury should not be instructed to allow damages.   (p. 67).

    (Sales, 35 Cyc. p. 651.)

2.  TRIAL—*On Motion for Judgment for Price of Store Fixtures, Where Color Was Only Issue, View Should be Granted, if Practicable.*

    Where the color of store fixtures is the only issue in a case, a view of the fixtures by the jury should be granted if it be practicable.   (p. 68).

    (Sales, 35 Cyc. p. 1314.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Ohio County.

Motion by the Grand Rapids Show Case Company for judgment against the Earle Rogers Company to recover the balance

on the purchase price of store fixtures. Verdict was for plaintiff for less than it asked. Plaintiff's motion to set the verdict aside was overruled, and it brings error.

*Reversed: new trial awarded.*

*W. L. Bradshaw* and *William F. Simpson,* for plaintiff in error.

*Nesbitt, Goodwin & Nesbitt,* for defendant in error.


HATCHER, PRESIDENT:

A motion for judgment was made on Sept. 27, 1924, in the circuit court of Ohio county, by the Grand Rapids Show Case Co. against the Earle Rogers Co., a Corporation, to recover the balance on the purchase price of certain store fixtures, which amounted on that date to $814.48. The Rogers Co. claimed recoupment in the sum of $500.00. The jury returned a verdict in favor of plaintiff for $422.85. The plaintiff moved that the verdict be set aside, but the motion was overruled.

On Jan. 24, 1924, the defendant gave T. H. Wills, a salesman for the plaintiff, an order for certain fixtures to be finished in the color of a sample known as "No. 56 Wax". When the fixtures came, they were somewhat lighter than the sample. Wills admitted the difference in color, and according to his testimony, told defendant "if your fixtures are not 'No. 56 Wax', we will replace, otherwise we will see how we can adjust them to bring them to the shade that you have in mind." Wills also testified that the goods were delivered in "No. 56 Wax"; that the sample shown defendant had darkened from its original color because of exposure to light; that the fixtures would also darken from exposure within six months or a year; that the fixtures could have been immediately brought to the color of the sample by the application of a chemical wash; that the plaintiff sent a representative, named Drake, to apply the wash to defendants' fixtures, but defendant refused to allow Drake to go over the fixtures; that at the time of the trial (which was had on Apr. 27, 1925), the fixtures had darkened to practically the shade of the

sample; and that there was $845.70, (principal and interest), then due plaintiff from defendant. The original sample of "No. 56 Wax" and a fresh sample of the same finish, which was lighter in color than the original, was shown to the jury. The chemical wash was then applied to the fresh sample, which darkened to match the original.

Two witnesses testified for defendant, D. E. Rogers, its president, and J. O. Schenerlein, its secretary. Their evidence tended to establish the following facts: that the fixtures came in an entirely different finish from that ordered; that upon its arrival, Wills admitted the mistake and promised that plaintiff would furnish new fixtures; that Drake said the fixtures could not be made to match the sample, and the only remedy was to furnish new fixtures; that the lighter finish was not suitable for the business of defendant, which was handling automobile accessories, as it would mar and absorb grease more quickly than the darker finish; that the fixtures did not match in color the other woodwork of the store; and that there had been no lessening of sales because of the lighter finish.

Rogers estimated that the damage by reason of the lighter finish of the fixtures was $50.00 a year, and that the fixtures would probably last for ten years. He admitted on cross examination that his estimate of damages was based on *what it was worth to him to be satisfied with the color.* Schenerlein considered the estimate of damages made by Rogers to be very reasonable. He also stated that the fixtures had already become marred by use to a certain extent, which would not have happened if they had been of the darker finish, but he did not state any amount of damages because of such marring.

The following instruction was offered by plaintiff but refused by the court:

"The Court instructs the jury that if they believe from the evidence that the fixtures delivered by the plaintiff to the defendant were finished in No. 56 Oak finish as ordered, and if the jury further believes that the fixtures delivered by the plaintiff to the defendant were a little lighter in color than the sample shown to the defendant by

> the plaintiff's salesman at the time the order was
> taken for said goods, and if the jury further be-
> lieves that by exposure to air for a period of eight
> or ten months, or the application of a chemical
> process to said goods would bring the color of the
> fixtures delivered to the defendant to the same
> color as the sample shown to the defendant, and if
> the jury further believes that the plaintiff sent a
> representative from Grand Rapids, Michigan, to
> Wheeling, West Virginia, for the purpose of re-
> finishing said fixtures with a chemical process so as
> bring said fixtures up to sample, and that the de-
> fendant refused to allow the plaintiff's repre-
> sentative to touch the fixtures or to bring them up
> to sample, then the jury will find for the plaintiff,
> and assess its damage at Eight Hundred Forty-
> five Dollars and Seventy Cents ($845.70)."

This instruction fairly presents the case made by plaintiff,
but is criticised by counsel for defendant on the theory that
damages accrued to defendant immediately upon the arrival
of the fixtures, and the instruction fails to authorize a deduc-
tion for such damage.    Drake's offer to apply the chemical
wash was made, according to Wills, about a month after the
fixtures were installed.    Whatever damage defendant corpora-
tion suffered during that month, does not appear in the
evidence.    The personal dissatisfaction of Rogers furnishes
no measure for defendant's damages during that interval.
Schenerlein does not say how much *marring* occurred to the
fixtures in that period.    The proper measure of damages in
case of a minor defect in goods ordered, is generally the cost
of remedying the defect if practicable to do so.    Sedgwick On
Damages, Vol. 11, par. 620; *Crouch* v. *Gutmann,* 134 N. Y.
45; *Keeler* v. *Herr,* 157 Ill. 57; *Rr. Co.* v. *Burnham,* 102 Fed.
699; *Mfg. Co.* v. *Phelps,* 130 U. S. 520; *Marsh* v. *McPherson,*
105 U. S. 709.    Therefore the correct measure of damages to
the defendant upon the arrival of the fixtures was the cost of
making the color furnished match the color ordered.    No evi-
dence was offered as to this cost.    In the absence of proper
proof of damages, the above instruction should not have au-
thorized a deduction for damages, and should have been given
as tendered.

The following instruction, No. 1, was given at the request of defendant:

> "The Court instructs the jury that the burden is upon the plaintiff to prove its case by a preponderance of the evidence and if you believe the plaintiff has not done that, then you should find for the defendant."

The defendant did not attempt to controvert the plaintiff's account, except to the extent of $500.00. Wills swore that the defendant owed the plaintiff $845. 70. The defendant did not deny owing $345.70 of that amount. In its special plea it admitted owing plaintiff $314.48. Consequently, the jury would not have been warranted in finding for the defendant under any theory of the defense, and the foregoing instruction was erroneous and misleading.

Defendant's instructions No. 2 and 3 given by the court are correct in form, but are inapplicable to this case, because of lack of proof of proper measure of damages under defendant's theory of the case.

A motion to have the jury view the fixtures was denied the plaintiff. Such motion is ordinarily within the sound discretion of the court. But here the only matter of difference between the parties was the exact shade of the finish of the fixtures. The fixtures would have furnished *the best evidence* as to whether, at the time of the trial, they substantially matched the sample. It was the duty of the court to permit the best evidence available to be submitted to the jury. *Compton* v. *County Court*, 83 W. Va. 745. Defendant's store was within the city of Wheeling. The trial of this case was had within the same city. The record does not disclose that a view of the fixtures would have inconvenienced either the court or the jury. We are therefore of opinion that this motion should have been allowed.

For the reasons given the judgment of the lower court will be reversed, and a new trial awarded the plaintiff.

*Reversed; new trial awarded.*