JOHNSON *v.* ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY.

ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY *v.* JOHNSON.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Nos. 60, 71. Argued October 30, 1891. — Decided November 16, 1891.

Under a written contract J. was to build a road for a railroad company for $29,000, and to have possession of the road and run and use it till he should be paid. He completed the road, but was not paid, and, while in possession, was forcibly ejected by the company. In an action against it for forcible entry and detainer he had judgment. Meantime, another company purchased the road, but before that, by a written agreement between J. and the first company, the amount due him under the contract was fixed at $25,000. The judgment was affirmed by this court, but before any judgment was entered on its mandate, the second company tendered to J. the $25,000 and interest, which he refused, and it then filed a bill in equity, for a perpetual injunction against J. from taking possession of the road, and obtained an order for a temporary injunction, on paying the money tendered, into a depository of the court, to its credit, with the right to J. to receive the money when he pleased. J. defended the suit on the ground that the agreement as to the $25,000 was conditional and temporary and that the condition had not been fulfilled. The court decreed that on the plaintiff's paying into court the costs of the suit, and $1000 for the expenses of J. in preparing to take possession of the road, a perpetual injunction should issue. Both parties appealed. *Held,*

(1) The agreement as to the $25,000 was binding on J.; and its terms could not be varied, by showing a contemporaneous verbal understanding that the $25,000 was to be paid in cash in a limited time;

(2) The tender and the payment into court changed the condition of affairs, and the right of J. to possession of the road ceased;

(3) The case was distinguishable from that of *Ballance v. Forsyth,* 24 How. 183; and like that of *Parker v. The Judges,* 12 Wheat. 561;

(4) The appeal by the plaintiff did not involve an amount sufficient to give this court jurisdiction.

THE court stated the case as follows:

On the 23d of April, 1879, A. H. Johnson, of Helena, Arkansas, and the Iron Mountain and Helena Railroad Company, an Arkansas corporation, entered into a written agreement, whereby Johnson, in consideration of $29,000 to be paid to him as thereinafter stipulated, agreed to complete the grading, tieing, culverting, clearing and grubbing on the company's railroad between its junction with the Arkansas Midland Railroad, eight miles west from Helena, and the town of Marianna, in Lee County, Arkansas, a distance of about eighteen miles, to furnish certain cross-ties and square timber, to lay the iron rails, and to place the road between those points in good running order, the rails, fastenings, spikes, and switches to be furnished by the railroad company, and the road to be completed on or before September 1, 1879, $1000 to be paid as each mile of the road was completed and ready for the running of locomotives and cars thereon, and the balance when the track should be laid and the superstructure completed to Marianna, and ready for the running of locomotives and cars. It was further agreed that all moneys which might be collected by a committee of citizens appointed on behalf of certain citizens of Helena, who had subscribed money to aid in building the railroad, should be paid by said committee to Johnson in discharge *pro tanto* of the contract; that, until the $29,000 should be fully paid, Johnson should have the possession of the road and the right to run, use and control the same, but such right of possession should cease and determine, and Johnson should deliver up possession of the road to the company, as soon as the $29,000 should be fully paid to him; that the company might at any time terminate the contract by paying to Johnson the value of the work then done by him; and that, in estimating the value of the work, the whole value, to the town of Marianna, should be fixed at $29,000, and the proportion then performed by Johnson was to be paid for at the rate of $29,000 for the whole. There was a provision for arbitration in case the parties should not agree as to the value of the work, and the company agreed to furnish to Johnson the iron rails, fastenings and spikes, from time to time, as rapidly as he might be ready to lay the same.

Having completed the road, and not having been fully paid according to the contract, Johnson, in September, 1880, was forcibly dispossessed by the president of the company. He brought his action against the company for forcible entry and detainer, in the District Court of the United States for the Eastern District of Arkansas, and, while it was pending, and on the 26th of October, 1882, the St. Louis, Iron Mountain and Southern Railway Company, an Arkansas corporation, became the purchaser of the road from the Iron Mountain and Helena Company, and on the 15th of December, 1882, took possession of the entire line of the latter company, extending from Forest City to Helena, and including the eighteen miles of track in question, and was afterwards made a party to said action. In that action, a judgment was rendered in favor of Johnson, on March 14, 1883, and on a writ of error from this court by the company it was affirmed (119 U. S. 608) on January 10, 1887.

Johnson took no immediate steps to get possession of the eighteen miles of road under his judgment. Before the purchase of the property by the St. Louis, Iron Mountain and Southern Railway Company, and on October 6, 1881, and while the forcible entry and detainer suit was pending, Johnson and the Iron Mountain and Helena Company entered into the following agreement:

"It is agreed between A. H. Johnson and the Iron Mountain and Helena Railroad Company as follows, viz. That the amount due said Johnson for constructing that part of said Iron Mountain and Helena Railroad between the former junction with the Arkansas Midland Railroad and the town of Marianna, under a contract executed in April, 1879, is the sum of $25,000 at this date; and it is further agreed that the suit now pending in the United States District Court for the Eastern District of Arkansas, at Helena, is to be continued at the October term, A.D. 1881.

     "(Signed)       IRON M'T'N AND HELENA R.R. Co.,
        "Per WM. BAILEY, *Pres't*
        "A. H. JOHNSON."

The suit referred to in that agreement was the suit for forcible entry and detainer brought by Johnson.    Before any judgment was entered on the mandate of this court, and on August 24, 1887, the St. Louis, Iron Mountain and Southern Company tendered to Johnson $33,825, being the $25,000 mentioned in the agreement of October 6, 1881, and interest on the amount at the rate of six per cent per annum from that date to the date of the tender; which tender Johnson refused.

On this state of facts, the St. Louis, Iron Mountain and Southern Company filed a bill in equity against Johnson; as a citizen of Ohio, in the District Court of the United States for the Eastern District of Arkansas, setting forth the contract of April 23, 1879, and the other facts hereinbefore stated, the fact that the plaintiff had been made a party defendant to the forcible entry and detainer suit, the affirmance of the judgment in that suit by this court, the agreement of October 6, 1881, the fact of the tender of the $33,825, and that Johnson was preparing to take actual possession of the eighteen miles of track, so as to cut off the plaintiff from all use of its line of railway from Marianna to Helena.    The bill prayed for an injunction to restrain Johnson from any interference with the eighteen miles of track, and for a perpetual injunction against him from attempting to take possession of it or interfere with it.

On the filing of the bill, an order was made by the court, that on the payment by the plaintiff into the German National Bank of Little Rock, Arkansas, the depository of the court, to the credit of the court, of the $33,825, and the payment to the clerk of all costs in the forcible entry and detainer suit, a temporary injunction should issue, enjoining Johnson from issuing any process to put the plaintiff out of the possession of the eighteen miles of track, or disturbing its possession thereof, until the further order of the court in the premises; and that Johnson might receive said sum from the depository at his pleasure, without prejudice to any of his rights, and particularly his right to receive any further sum that might be due him, and for which he had a lien on the eighteen miles of

track, or a right to the possession of the same as security therefor.

Johnson appeared in the suit and put in an answer to the bill, setting up that the agreement of October 6, 1881, was not in the nature of an account stated, but was, and was intended to be, conditional and temporary, and that the condition had not been fulfilled. To this answer there was a replication, and proofs were taken.

On final hearing, the court made a decree that, on the plaintiff paying into the registry of the court the costs of the suit, and $1000 for the amount expended by Johnson in necessary preparations to take possession of the eighteen miles of track and operate the same as required by law, Johnson should be perpetually enjoined from executing the judgment at law in his favor for the possession of the eighteen miles; and that, if the plaintiff should fail to pay those sums into the registry of the court, for the use of Johnson, within ninety days from the date of the decree, the temporary injunction should be dissolved, and Johnson might sue out proper process and execute the judgment at law in his favor for the possession of the eighteen miles of road. Both parties took appeals to this court.

*Mr. John J. Hornor* and *Mr. A. H. Garland* for Johnson.

I. The appellant in an action of forcible entry and detainer instituted by him against the Iron Mountain and Helena Railroad, (to which appellee on its own motion had been made a party defendant in the District Court of the United States for the Eastern District of Arkansas, at Helena, and had taken upon itself the defence of said suit,) was adjudged entitled to the possession of said railroad, and a writ of restitution was ordered to be issued to place him in possession thereof, and the right was given to him to use, operate and control it, until paid in full the sum due him under the contract. The bill contains no allegation that anything has arisen since the institution of said suit or rendition of said judgment which rendered it inequitable that said judgment should not be enforced.

Equity will interpose to restrain the execution of a judgment upon the suggestion of fraud, accident, mistake or surprise in procuring it. In the case at bar there is not only no suggestion of fraud, accident, mistake or surprise, but, on the contrary, the sole issue in the action at law was the right of appellant under his contract to keep possession of the road, and all the defences which legal acumen could bring forward to defeat this right were invoked. The bill suggests nothing which had arisen since the judgment in the action at law by which the appellant had forfeited, either at law or in equity, the right of possession given him by the contract, and confirmed by the judgment. Even if the application had been made to restrain the prosecution of the action of forcible entry and detainer, no injunction would have been granted unless it appeared that certain manifest irreparable injury would have followed the withholding the relief. *Crawford* v. *Paine*, 19 Iowa, 172; *Lamb* v. *Drew*, 20 Iowa, 15; *Hamilton* v. *Hendrix*, 1 Bibb, 67, 70; *McGuire* v. *Stewart*, 1 T. B. Mon. 189.

This principle of law is peculiarly applicable to the case at bar because appellee had utterly failed and refused to obtain any adjustment of the amount due during all the period when the right of possession was being litigated by it. As soon as it is adjudged a trespasser it demands a settlement upon its own terms, and, failing to obtain it, cries out that it, as well as the public, will suffer irreparable injury if a court of equity does not maintain it in its wrong doing, and actually not only tendering a less amount than the terms of the contract agreed should be paid, but a less amount than was actually due on its own interpretation of the contract.

A court of conscience will not place a wrong-doer in a better position than he has placed himself. It will leave him exactly where it finds him. *Creath* v. *Sims*, 5 How. 191, 205; *Sample* v. *Barnes*, 14 How. 70.

A court of equity will not protect a party in the enjoyment of that which he has obtained by a violation of law and thereby enable him to benefit by his own wrong. *Collett* v. *Jones*, 7 B. Mon. 586; *Howard* v. *Current*, 9 B. Mon. 493.

II. The relation between the parties was contractual and

the bill seeks through a court of equity to relieve appellee from the effects of the contract merely because the enforcement will now prove a hardship.

Mere hardship or inconvenience will not authorize a court of equity to set aside the terms of a written contract. *Etting* v. *United States Bank*, 11 Wheat. 59; *Stettheimer* v. *Killip*, 75 N. Y. 282.

Nor will a court of equity relieve a party from an improvident or foolish contract, if entered into without fraud or misrepresentation on the part of the other contracting party. *Moffat* v. *Winslow*, 7 Paige, 124.

III. The appellee is a trespasser in possession, after full defence made by it to the action at law for such trespass.

It has been judicially determined in the case of *Iron Mountain & Helena Railroad* v. *Johnson*, 119 U. S. 608, that not only a railroad, but this identical railroad, comes within the provisions of the statute of the State of Arkansas on the subject of forcible entry and detainer. It is alleged in the bill that Johnson is only entitled to the possession as security for his debt. If this be true, then under the laws of Arkansas all that the appellees were required to do before suing out the writ of unlawful detainer and replevying this railroad was to tender to Johnson in possession the amount due under the contract as construed by them. Under the statute the remedy for the appellees to recover possession after any unlawful holding over by Johnson, was as summary as this court adjudged it to be in favor of appellant when he was forcibly ejected from it. The remedy at law was full, complete and adequate and was the remedy provided by law when the contract was entered into in 1879. And as such must have been in contemplation of the parties who executed such contract. *Pritchard* v. *Norton*, 106 U. S. 124.

IV. Neither the bill, the order of the judge granting the injunction nor the decree perpetuating it, settled in any manner the rights of the parties under the contract of April 23, 1879. A sum of money is simply substituted as appellant's security, instead of possession of the road, as provided in the contract.

*Mr. John F. Dillon* for the St. Louis, Iron Mountain and Southern Railway Company. *Mr. Winslow S. Pierce* and *Mr. David D. Duncan* were with him on the brief.

Mr. Justice Blatchford, after stating the case, delivered the opinion of the court.

It is contended by Johnson that the court below had no jurisdiction to grant the injunction prayed for in the bill, because he had been adjudged, in the suit for forcible entry and detainer, to be entitled to the possession of the 18 miles of the road, and a writ of restitution had been ordered to issue to place him in possession thereof; that it is not alleged that anything had arisen since the institution of the forcible entry and detainer suit or the rendition of the judgment in it, which made it inequitable that such judgment should be enforced; that the relations between the parties were entirely contractual, and Johnson was seeking nothing not provided for by the contract of April 23, 1879; that the bill in this suit does not allege that such contract was obtained by fraud, accident, mistake or surprise; that the plaintiff in this suit is a trespasser in possession, after full defence made by it to the forcible entry and detainer suit, and, without restitution, seeks, through the interposition of a court of equity, to retain the fruits of its trespass and nullify the judgment at law; and that the bill in this suit does not seek to settle the rights of the parties under the contract of April 23, 1879, nor does the decree thereon settle such rights, but the order of injunction and the decree nullify such contract by substituting a sum of money as security to Johnson, instead of possession of the road, as provided therein.

But we are of opinion, as contended by the plaintiff, that, on the evidence in the case, the agreement of October 6, 1881, was a settlement of the amount due to Johnson, and was and is binding upon him. The tender by the plaintiff to Johnson of the $33,825, followed as it was by the payment into the German National Bank of that sum, on August 26, 1887, to the credit of the court, as appears by the record, changed the

condition of affairs, and entitled the plaintiff to the relief by injunction asked for, because it showed that the contract of April 23, 1879, had been fully complied with by the plaintiff, as the successor of the Iron Mountain and Helena Railroad Company, and that Johnson had no further right to the possession of the road. The $25,000, with interest from October 6, 1881, was substituted for the $29,000; and the contract of April 23, 1879, is to be read as if the sum of $25,000, instead of $29,000, had been mentioned in it. Johnson was to have possession of the road, and the right to run, use and control it, only as security for the payment of the money, and was to deliver up possession of it to the Iron Mountain and Helena Company, of which the plaintiff is the successor, as soon as the money should be paid. It was paid, by the tender and deposit of the $25,000, with interest, and the right of Johnson further to retain possession of the road, or to interfere with it, ceased.

This case is not like that of *Ballance* v. *Forsyth*, 24 How. 183. There this court had, in *Ballance* v. *Forsyth*, 13 How. 18, affirmed a judgment in ejectment against Ballance. After the mandate went down from this court, Ballance filed a bill in equity, setting forth the same titles that were involved in the ejectment suit, and praying relief, on certain special grounds, by enjoining the execution of the judgment. The bill was dismissed, and this court affirmed the decree, on the ground that Ballance could not appeal from the judgments of the Circuit Court and of this court to a court of chancery, on the relative merit of the legal titles involved in the controversy, which they had adjudicated. But in the present case the relief in equity does not involve a reëxamination of the merits of the original controversy, but is based on grounds arising subsequently to, and independently of, such controversy.

The question raised as to the jurisdiction of the court below in this suit is disposed of by the ruling in *Parker* v. *The Judges*, 12 Wheat. 561, where, while a writ of error was pending in this court, a bill in equity was filed in the court below, and an injunction issued to stay proceedings on the judgment.

After the judgment had been affirmed here, an order was issued by this court to show cause why that court should not issue an execution on the judgment. It was contended that an injunction could not be awarded while the record was before this court on a writ of error. This point was thus disposed of, Chief Justice Marshall delivering the opinion of the court: "We do not think this a valid objection. The suit in chancery does not draw into question the judgments and proceedings at law, or claim a right to revise them. It sets up an equity independently of the judgment, which admits the validity of that judgment, but suggests reasons why the party who has obtained it ought not to avail himself of it. It proposes to try a question entirely new, which has not been and could not be litigated at law. It may be brought before the commencement of a suit at law, pending such suit, or after its decision by the highest law tribunal." See also *Marshall* v. *Holmes, ante,* 589, and cases there cited.

Although the agreement in regard to the $25,000 was made October 6, 1881, and the judgment in the forcible entry and detainer suit was not rendered until March 14, 1883, such agreement could have constituted no defence to that suit. It was the tender of the money which laid the foundation for the injunction suit, and, although the money might have been tendered at an earlier day, the delay in tendering it deprived the company of no rights and conferred none on Johnson. As was said by this court in the forcible entry and detainer suit, (119 U. S. 608, 612,) the questions there raised by the company in regard to the original contract of April 23, 1879, and to the right of Johnson to hold possession of the road, were immaterial. Equally, the equitable right involved in the present suit could not have been material in the former suit, even if such right had then existed.

The written agreement of October 6, 1881, is full and complete; and its terms cannot be varied, qualified or contradicted by showing, as is sought to be done, a contemporaneous verbal understanding that the $25,000 mentioned in the agreement was to be paid in cash in a limited time, or satisfactory securities delivered in a limited time, or the written contract

was to be void. The agreement of October 6, 1881, is, on its face, an absolute one, that the amount due to Johnson under the prior contract of April 23, 1879, was the sum of $25,000 on October 6, 1881; and it cannot be reduced by parol evidence to a mere offer that in a certain contingency Johnson would accept the sum specified in full for the sum provided in the original contract.

As to the appeal by the plaintiff, which calls in question so much of the decree as imposes upon it the costs of the suit and the payment of the $1000, that appeal must be dismissed, because it does not involve an amount sufficient to give this court jurisdiction of it.

> *In No. 60 the decree is affirmed with costs against Johnson; and in No. 71 the appeal is dismissed for want of jurisdiction.*

MR. JUSTICE LAMAR dissenting.

I concur in the judgment dismissing the appeal in No. 71 for want of jurisdiction, but I dissent from the judgment and opinion of the court, just announced, affirming the decree of the court below in No. 60. As I see the case, it is a bill in which the complainant, (The St. Louis, Iron Mountain and Southern Railway Company,) asks the aid of a court of equity to relieve it from the execution of a judgment of a court of law, affirmed by this court, upon the ground that it would be against conscience to execute that judgment in obedience to the mandate of this court. I do not say that a court of equity cannot interfere in such a case. But, as has been remarked by Lord Redesdale, " bills of this description have not of late years been much countenanced." 2 Story Eq. Jur. § 888. In general, such jurisdiction is exercised only in a case where the equity of the applicant is free from doubt — such equity, for instance, as that the judgment was obtained by fraud, accident or mistake; or that the applicant had a good defence to the action at law of which he could not avail himself in a court of law, or was prevented from doing so by the act of the adverse party, or by some accident unmixed with negligence or fault

in himself ; or that the right, upon which the relief he asks in equity, arose after the judgment at law was obtained, and independently of it, and which would not have constituted a defence in the suit at law. *Marshall* v. *Holmes, ante,* 589, and cases there cited. I do not think that the state of facts which appears in this record presents such a case. It is more like the case of *Ballance* v. *Forsyth,* 24 How. 183. In that case, Ballance brought an action of ejectment against Forsyth and obtained a verdict and judgment for the recovery of the land in dispute. The judgment was affirmed by this court. 13 How. 18. After the mandate went down from this court, Ballance filed a bill in equity, setting forth the same titles that were involved in the suit at law, and praying relief on certain special grounds. Mr. Justice Campbell, who delivered the opinion of the court, said : " This is a bill filed by the plaintiff to enjoin the execution of a judgment in the Circuit Court, upon which a writ of error had been taken to this court and affirmed. The cause in this court was between the same parties, and the decision of the court is reported in 13 How. 18. The plaintiff sets forth the claims of the respective parties, and insists that his is the superior right, and that he is entitled to have the property. *But it is not allowable to him to appeal from the judgment of the Circuit Court and Supreme Court to a court of chancery upon the relative merit of the legal titles involved in the controversy they had adjudicated.*"

These few sentences aptly characterize the case under consideration. The two cases, in their essential features, are very similar. In the one cited, the relative merits of the legal titles to the property in dispute were involved. In this, the relative claims of right to the possession of the property in dispute are involved. There is one difference between them. The applicant for relief in this case comes into court an adjudged trespasser and wrong-doer, asking for relief from the legal effects of his own wilfully illegal act. In speaking of the complainant as a trespasser and wrong-doer, I am sustained by the statement in the bill itself, to the effect that, whilst the action of forcible entry and detainer was pending, the complainant bought the property of which the appellant was dispossessed,

took possession thereof and became a maintainer of the defendant in the suit, and was itself made a party to said suit.

The special equities upon which Forsyth, in the case just referred to, asked for relief, are not enumerated in the report of the case. But in this case we find none of the equities which courts of chancery have recognized as justifying an interposition by injunction to restrain the execution of a judgment. It is not pretended that the judgment in the action at law was obtained by fraud, mistake or accident. It is not denied that that judgment was rendered after a fair, legal, protracted and warmly contested trial. There is not an averment that the judgment is even erroneous in law or that it worked an unjust hardship on the railroad company.

The bill alleges no fact or circumstance which has occurred since the rendition of the judgment by the District Court and this court, which would make its execution against conscience. The only equity it assumes to set up is the irreparable damage and injury which it alleges would be caused to the railroad company by reason of its being a common carrier and a United States mail carrier over the railroad in question, whose duties it would be unable to perform if not allowed to retain possession and use of said railroad. The answer to this claim is, that the irreparable mischief was as imminent when the action at law was pending as it is now. Nor was there any fact which being a good defence, either legal or equitable, pending the action, of which it was prevented from availing itself by any agency of the opposite party or by any accident unmixed with its own negligence or fault.

I do not think that the written agreement of October 6, 1881, between the appellant, Johnson, and Bailey, (the president of the railroad company,) merits consideration as a ground of equitable relief, in view of the peculiar circumstances which attended its execution. That writing was entered into whilst the possessory suit was pending and before the complainant was made a party thereto. If it is a valid ground for equitable intervention now, it was then; and the complainant could have filed his bill on the equity side of the court, praying that the action be suspended until the equities of the case could be adjusted, and thus have prevented the judgment from being

obtained. Instead of pursuing such a course the complainant waited about seven months after the judgment was affirmed by this court, when, assuming that the written agreement, so called, was the sole measure of the rights of Johnson under the judgment, it tendered him the sum named in that agreement, and upon his refusal to accept the same as a full satisfaction, instituted this suit, asking the court to aid it in retaining its illegal and ill-gotten possession of the property in the controversy. The same remark applies to the tender by the company to Johnson of $25,000. It was not such a fact, arising after the judgment, and independent of it, as constitutes in itself alone a right to invoke the aid of a court of equity; but it was an act closely connected with that judgment, not independent of it, resorted to as a means of avoiding the execution thereof by offering the $25,000 as a substitute for its satisfaction; in no aspect of it does that tender, relied on as the foundation of this suit, create the clear and unquestionable equity which alone can justify a court of chancery in suspending the execution of a judgment, for the express purpose of giving its sanction and protection to a possession acquired by an unlawful forcible entry and detainer. The undisputed facts of the case are, that the appellee purchased from the original transgressor, who had ousted Johnson of his rightful possession of the railroad property, took possession and continued in the wrongful occupancy and use of it; contested the action of forcible entry and detainer brought by Johnson until judgment was rendered in his favor, awarding to him restitution of the possession of the property, which, on a writ of error from this court, was affirmed; and now when it asks for a decree enjoining Johnson from taking the possession thus adjudged to him, equity demands that before the preventive remedy of injunction can be invoked, there must first be an actual restoration of the injured party to his original rights.

I think the decree of the court below should be reversed, and the cause remanded with direction to dismiss the bill and dissolve the injunction.

MR. JUSTICE GRAY was not present at the argument and took no part in the decision.