## VULCAN IRON WORKS CO. v. ROQUEMORE.

(Circuit Court of Appeals, Fifth Circuit.   December 21, 1909.)

No. 1,926.

1. SALES (§ 168½*)—TRIAL AND APPROVAL—CONSTRUCTION—CORRECTION OF DEFECTS.

Where a contract for the sale of a steam shovel provided that if during the trial test any part of the shovel should prove defective, or any change be necessary, the seller should have a reasonable time to replace such parts, or make such changes as it should find necessary, the fact that the boiler, which was materially smaller than required by the specifications, was found during the trial test to be too small, and that certain other defects were discovered, did not warrant the buyer in refusing to permit the seller to perform; the seller having as of right a reasonable time in which to replace the boiler and correct the other defects.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 409, 410; Dec. Dig. § 168½.*]

2. SALES (§ 418*)—SELLER'S CONTRACT—BREACH—DAMAGES.

For breach of a seller's contract to sell, the measure of the buyer's damages in case he has not paid any part of the price is the difference between the agreed price and the market value of the goods, or article sold, at the time of and place of delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1195; Dec. Dig. § 418.*]

3. SALES (§ 418*)—BREACH—DEFECTIVE MACHINERY—DAMAGES.

Where a machine delivered under a contract of sale is defective, the measure of the buyer's damages is the actual cost of supplying the deficiency.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1200; Dec. Dig. § 418.*]

4. SALES (§ 418*)—SELLER'S CONTRACT—BREACH—DAMAGES—MARKET VALUE.

In an action for breach of a seller's contract to sell an article having no market value, the actual value must be determined by the best evidence obtainable, which in some instances might be proof of what it would cost the buyer acting in good faith and with diligence to procure the article contracted for in the condition required by the contract, delivered at the place named for delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1182; Dec. Dig. § 418.*]

5. SALES (§ 418*)—SELLER'S BREACH—DAMAGES—PART PAYMENT IN GOODS—VALUE—AGREEMENT AFFECTING MEASURE OF DAMAGES.

Where defendant contracted to manufacture and deliver to plaintiff a specified steam shovel for $6,250, $1,500 of which was to be paid in cash and the balance, $4,750, by delivery to defendant of another shovel owned by plaintiff the value so fixed must be regarded as the value in determining the buyer's measure of damages for breach by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1187; Dec. Dig. § 418.*]

6. EVIDENCE (§ 419*)—PAROL EVIDENCE—WRITTEN CONTRACT—CONSIDERATION.

Where a written contract for the sale of a steam shovel provided for payment of $1,500 in cash and the balance, $4,750, by the delivery to the seller of another shovel owned by the buyer, parol evidence, in an action for the seller's breach of contract that the buyer's shovel was not worth the contract value, was inadmissible as varying the terms of the contract, notwithstanding it also provided that on the buyer's acceptance of the sell-

er's proposition the contract was to be a mutual cancellation of all obligations between the parties to the date of the contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1923; Dec. Dig. § 419:*]

In Error to the Circuit Court of the United States for the Middle District of Alabama.

Action by John D. Roquemore against the Vulcan Iron Works Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This is an action for damages for the breach of a contract of sale. It was brought by the defendant in error (the plaintiff below) against the plaintiff in error (the defendant below) in the city court of Montgomery, and was duly removed on the ground of diverse citizenship to the Circuit Court.

On January 13, 1905, the Vulcan Iron Works Company, an Ohio corporation, sold to John D. Roquemore, a citizen of Alabama, a shovel called the "Baby Giant." For convenience it will hereafter be called the "first shovel." Afterwards, on December 22, 1905, the Vulcan Iron Works Company (hereinafter called the "seller") sold to Roquemore (hereinafter called the "buyer"), by a written contract of sale, a machine called the "Little Giant Special Steam Shovel." This machine will hereafter be referred to as the "second shovel." The following is the contract of sale:

"Memorandum of Sale of Little Giant Special Steam Shovel No. ———.

"To John D. Roquemore, Montgomery, Alabama:

"We, The Vulcan Iron Works Company, of Toledo, Ohio, sell to John D. Roquemore of Montgomery, Ala., one Little Giant Special Steam Shovel No. ——— on trucks, our standard make, built according to the specifications hereto attached, and which is made a part of this contract, said specifications being changed so far as required to put said shovel on standard trucks in place of traction wheels.

"We agree to ship the same on or before March 1st, 1906, barring, of course, delay that may be caused by accident, strikes or other calamities, unavoidable, and beyond our control.

"Price for said steam shovel is $6,250.00 net f. o. b. car Toledo, Ohio, freight paid by John D. Roquemore on delivery at destination and purchase price, $6,250.00, to be paid $1,500.00 cash upon the acceptance of said shovel and balance by the delivery to said the Vulcan Iron Works Company at the place where the same now is, a certain Baby Giant No. 926, delivered to said Roquemore in pursuance of a certain contract between the parties dated Jany. 13, 1905.

"We will send a competent steam shovel engineer at our own expense for 15 days of 10 hours each from time of his leaving Toledo until his return thereto, proceeding without delay en route, this date to be when he leaves Toledo in response to your wire notice of arrival of said steam shovel at destination. All other expenses and completing task of getting steam shovel to operation and trial test you are to bear. This engineer is to superintend the unloading and to operate the engines of said Steam Shovel No. ——— to demonstrate same to be as herein represented.

"If after said trial and test, said Little Giant Special Steam Shovel has proven to be as guaranteed herein, you are to accept same, and relieve us from further expense.

"If it is found necessary for our engineer to remain longer than the said fifteen days, you are to pay us $5.50 for each day you retain him.

"If during said trial test, any part of said Little Giant Special Steam Shovel shall prove defective, or any change necessary to be made, we are to have a reasonable time to replace such parts or to make such changes as we find necessary. If we then fail to demonstrate our guarantee, we will remove said Little Giant Special Steam Shovel at our expense, and refund any money having been paid to us by you on purchase of same and you hereby waive all claim for possible damage or expense.

"It is further agreed that the title and ownership of said Little Giant Special Steam Shovel shall remain with and be the property of the Vulcan Iron Works Company until payment is made as noted herein.

"Upon your acceptance of this proposition it is to be and constitute a mutual cancellation of all obligations between said parties to this date.

"Montgomery, Ala., Dec. 22nd, 1905.

"The Vulcan Iron Works Company,

"Accepted:                                   Per W. H. A. Read, Vice-President.

"John D. Roquemore."

The declaration claimed $5,000 as damages for the breach of the contract, which was set out in full. It concluded with the following averment and charge of breach:

"And plaintiff avers that the specifications mentioned in and attached to the said contract called for and required, among other things, a boiler, which was to be used as a necessary part of said shovel, to wit, fifty-four inches in diameter and eight feet six inches in height, also to have attached thereto a boiler feed called a Pemberthy injector.

"And plaintiff avers that the defendant violated the terms of said contract on its part, in that it failed to ship to the plaintiff a shovel with a boiler of the dimensions as required by the said contract and specifications thereto attached; that the defendant did, on or about the first of March, 1906, ship to the plaintiff a steam shovel and a boiler to be used in connection therewith and as a part thereof, but which was materially different from the boiler called for in said contract; that the boiler so shipped was of dimensions of, to wit, forty-eight inches in diameter and seven feet six inches in height and was totally incapable of operating the said shovel; that said boiler did not have attached thereto a Pemberthy injector, as by the said contract called for; and that one of the engines in connection with and to be used in the operation of the said shovel and as a part thereof was defective, in that there was an opening or hole in the steam chest of said engine, made when the said engine was casted, so that the steam escaped therefrom, rendering the same incapable of being operated, and plaintiff refused to accept said shovel so shipped; that plaintiff paid the freight on said shovel, thus shipped, from Toledo, Ohio, to Montgomery, Ala., amounting to, to wit, $500.00, which has never been repaid to plaintiff; that the value of the shovel stipulated to be delivered by plaintiff to defendant on the delivery and acceptance by plaintiff of the shovel agreed to be shipped in accordance with said contract was, to wit, $1,500.00, all to the damage of the plaintiff as aforesaid, wherefore plaintiff sues."

The seller, among other pleas, filed the following:

"(6) And for further answer * * * the defendant says that the plaintiff should not recover for the alleged breach of the contract as complained of in said complaint, for that in the said contract which in said complaint is alleged to have been entered into between the plaintiff and the defendant on, to wit, December 22, 1905, a copy of which said contract is hereto attached as Exhibit A, and made a part of this plea with leave to refer thereto, there was contained the following paragraph:

" 'If during said trial test, any part of said Little Giant Special Steam Shovel shall prove defective, or any change necessary to be made, we are to have a reasonable time to replace such parts or to make such changes as we find necessary. If we then fail to demonstrate our guarantee, we will remove said Little Giant Special Steam Shovel at our expense, and refund any moneys having been paid to us by you on purchase of same, and you hereby waive all claims for possible damage or expense.'

"And defendant says that after the said Little Giant Special Steam Shovel was shipped by the defendant to the plaintiff, as provided for in said contract, and was received by the plaintiff, the defendant sent, in response to a wire notice of the plaintiff of the arrival of said steam shovel at Montgomery, a steam shovel engineer for the purpose of getting the steam shovel into operation and making a trial test of said steam shovel, and that the said steam shovel engineer proceeded to Montgomery, and upon arriving there proceeded to operate the said steam shovel and to have a trial test of said Little Giant Special Steam Shovel shipped to the plaintiff under the contract hereinabove

referred to; and that during the trial test so had and conducted by said steam shovel engineer sent by the defendant, it was discovered that the boiler on said steam shovel was smaller than the one alleged to have been contracted for by the plaintiff, and that said boiler did not have attached thereto a Pemberthy injector boiler feed. That thereupon and during the trial test of said steam shovel, the defendant, as it had a right to do under said provision contained in said contract as hereinabove set out, offered to replace such parts or to make such changes as were necessary and make said Little Giant Steam Shovel accord in every respect to the specifications of said contract, but that the plaintiff refused to allow and would not permit the defendant to replace such parts as were defective or to make such changes as were found necessary by the defendant to make said Little Giant Steam Shovel in accordance with the contract which was entered into between the plaintiff and the defendant. Wherefore the defendant says that the plaintiff is not entitled to recover in this suit."

The seller's eighth plea stated the same facts substantially as set out in the sixth plea, and then alleged that it "offered to take back the shovel which was delivered to the plaintiff and to give the plaintiff a new shovel in every respect in accordance with the contract made by the plaintiff with the defendant and in accordance with the plans and specifications, but that the plaintiff refused to allow and would not permit the defendant to take the shovel back and give to the plaintiff in place thereof a new shovel in accordance with the plans and specifications and in accordance with said contract. Wherefore the defendant says that the plaintiff is not entitled to recover in this suit."

Demurrers were interposed to these pleas alleging various grounds to the effect that the pleas did not show a defense to the action. The court sustained these demurrers. The case was tried on the plea of the general issue, and on pleas 10 and 11, which contained general denials of the complaint, but, also, averments of some of the facts stated in pleas 6 and 8, which the court had held insufficient. Witnesses were examined by both parties, and, on the part of the plaintiff below, there was evidence tending to prove the averments of the complaint, including the alleged breaches of the contract. The defendant below offered evidence tending to sustain its pleas and to show that it had offered to replace parts of the machine found defective and to make such changes as were necessary to make the machine comply with the terms of the contract. Exceptions were reserved separately to the following portions of the judge's charge:

"Suppose you find that the contract was made for a 54-inch boiler, as specified, and the machine sent down here had a 48-inch boiler, then that contract to try it don't apply to that sort of a machine. It applied only to the one that conformed to the stipulations of the plaintiff's contract. * * *

"Now the evidence is uncontradicted in this case that a machine was sent down there that didn't have a 54-inch boiler, and the experiment was made with that, and that after the experiment was made, it didn't prove satisfactory, and the plaintiff refused to receive it. That is the uncontradicted evidence. Now, then, the law giving each his rights in this connection says that was a breach of contract. Now in those 15 days he did have a right to tender him an engine—I mean a steam shovel—of the character specified; but if he simply tendered him an offer to make him a steam shovel at some indefinite future time, then the plaintiff was not bound to receive it, unless in some of their transactions in some way they waived that, and that is for you to judge whether they waived it. * * *

"Now, then, the contract having been breached in that aspect of it, what are the damages? The object of the law in computing damages is to make a man whole, to reimburse him for his loss, to put him in as good condition as he would have been if the contract had been carried out. Now the plaintiff didn't pay anything on this contract. The $1,500 he didn't pay. The machine that was to make the balance of the payment, he didn't deliver; he still has it. You take the $1,500 and the value of the first machine and deduct that from the $6,250, and that would be the measure of recovery if you find that the contract was as sued on, and that it was breached, as the evidence tends to show it was, by the failure to ship here a machine with a 54-inch boiler, the one that was tested and tried. * * *

"If the evidence shows he didn't ship a 54-inch boiler as specified, and that the one that was down here was tried and rejected, then the plaintiff was not bound to wait or take a tender of a steam shovel of the proper size and gauge to be delivered at some uncertain time in the future. He has a right to reject that, and say, 'No, I won't take it; this contract is ended.' If you find that to be the case, the measure of damages, I repeat it, the $1,500 he has not paid, you take that out, and he has kept the machine and you take that out. Now the value of that and the $1,500 is the amount to be deducted from the $6,250, with interest from the end of that trial test, and the freight."

The trial resulted in a verdict and judgment for the plaintiff below for $3,413.91, and the defendant below brings the case to this court.

Phares Coleman and Lee H. Weil (Coleman, Dent & Weil, on the brief), for plaintiff in error.

B. P. Crum (C. H. Roquemore and Steiner, Crum & Weil, on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

SHELBY, Circuit Judge (after stating the facts as above). The contract of sale contains an important provision for the benefit of the seller which limits the right of the buyer to reject the second shovel because it does not conform to the contract:

"If during said trial test, any part of said Little Giant Special Steam Shovel shall prove defective, or any change necessary to be made, we are to have a reasonable time to replace such parts or to make such changes as we find necessary."

This sentence secures to the seller the right not only to repair or to remove defects, but to "make any change necessary to be made" and "to replace such parts" as are found to be defective or such parts as fail to comply with the contract. The seller is to have a reasonable time to do this. In sustaining the demurrers to the sixth and eighth pleas, we are of opinion that the court unduly limited the effect and meaning of this provision of the contract. The buyer cannot recover for a breach of the contract if he refused to let the seller perform it. If the facts stated in the pleas are true, he did so refuse.

And the charge of the court is subject to the same objection. The court said:

"Suppose you find that the contract was made for a 54-inch boiler, as specified, and the machine sent down here had a 48-inch boiler, then that contract to try it don't apply to that sort of a machine. It applied only to the one that conformed to the stipulations of the plaintiff's contract."

We are of opinion that the seller would have had the right within "a reasonable time" to replace the boiler, when it was found during the trial test to be too small, with a larger one, as required by the contract.

These conclusions are applicable to other rulings upon demurrers to other pleas, and, also, to other alleged defects in the machine furnished.

The following excerpts from the charge of the trial court will indicate the directions given the jury as to the measure of damages:

"Now, the plaintiff (Roquemore) didn't pay anything on this contract. The $1,500 he didn't pay. The machine that was to make the balance of the pay-

ment, he didn't deliver; he has still got it. You take the $1,500 and the value of that machine and deduct that from the $6,250, and that would be the measure of recovery.    *    *    *

"The measure of damages, I repeat it, the $1,500 he has not paid, you take that out, and he has kept the machine, you take that out. Now the value of that and the $1,500 is the amount to be deducted from the $6,250, with interest from the end of that trial test, and the freight."

Evidence was received tending to show that the first shovel, which was agreed to be received as part payment for the second shovel, was not worth the value put on it by the parties in the written contract sued on. Some of the evidence tended to show that it was not worth more than $1,500. Exceptions were reserved by the plaintiff in error to the admission of this evidence, and also to the charges quoted as to the measure of damages. The two exceptions will be considered together.

For the breach of the seller's agreement to sell, the measure of the buyer's damages, if he has not paid any part of the price, is the difference between the agreed price and the market value of the goods or article sold at the time and place of delivery. This is unquestionably the general rule. 2 Mechem on Sales, § 1736. If the machine delivered is defective, the measure of the buyer's damages is the actual cost of supplying the deficiency. Marsh v. McPherson, 105 U. S. 709, 26 L. Ed. 1139. Where the thing sold is of a kind that has no market value, as is sometimes the case, then the actual value must be determined by the best evidence available; but the measure of damages would be the same—the difference between the contract price and the value of the thing at the time and place of delivery. The value in such cases is sometimes ascertained by proof of what it would cost the purchaser, acting in good faith and with diligence, to procure, in the condition required by the contract and delivered at the place named for delivery, the kind of article or goods contracted for. Grand Tower Co. v. Phillips, 23 Wall. 471, 479, 23 L. Ed. 71. It may be that there is no sufficient evidence in the record as to the market value of the second shovel, but it does not appear that the plaintiff could not have offered such evidence. It is indicated by the record, however, that there were other manufacturers of shovels besides the seller, and there seems to be no reason why the buyer could not have shown what it would reasonably have cost him to procure a shovel like the one contracted for. The buyer, in his letter of March 30, 1906, refers to "other manufacturers of steam shovels" who have "not made any advance in their price over what they were a year ago.    *    *    *" This indicates that, if it were impracticable to make the usual proof of market value, proof could have been adduced to show what it would have cost the buyer to procure a shovel from other manufacturers like the one he had contracted for. There is nothing therefore in the case presented by the record now before us to require a departure from the settled rules as to the measure of damages, unless it can be found in the terms of the written contract of sale.

There is nothing unusual in the contract of sale that can be cited as bearing specially on the question of the measure of damages, unless it is that the buyer was permitted to pay part of the price by the delivery to the seller of a named article at a fixed value. The contract

sued on is a sale of the second shovel for $6,250, to be paid as follows: $1,500 in cash, and the balance, $4,750, by the delivery to the seller of the first shovel. It should be kept in mind that the price of the thing sold is fixed in money, $6,250; part to be paid in cash, and the remainder, $4,750, a fixed sum, to be paid by the delivery by the buyer to the seller of a named article. For the purposes of this suit, as bearing on the question now considered, is the moneyed value placed on the first shovel binding on the parties? This is a suit by the buyer for breach of contract. First, look at the question in a suit by the seller against the buyer for the purchase money. If the Vulcan Company were suing Roquemore on the contract for the purchase money, he having accepted the second shovel. but not having paid the cash payment nor delivered the first shovel according to agreement, can any one doubt that the Vulcan Company would be entitled to judgment for the agreed price, $6,250? Roquemore could not, in that case, hold the first shovel, and yet say that it was almost worthless, and obtain an abatement of the agreed price to be paid for the second shovel. If he did not pay the $4,750 by the delivery of the first shovel, he would have to pay it in money. Whether or not the seller has the right to decline to take money and require the delivery of the article as agreed is a question not involved in this case. The effect of the contract was to permit the buyer to pay a certain amount of the purchase money by the delivery to the seller of the first shovel; if he failed to so pay it, he must pay it in money if the seller requires it. Heywood v. Heywood, 42 Me. 229, 66 Am. Dec. 277; Smith v. Coolidge, 68 Vt. 516, 35 Atl. 432, 54 Am. St. Rep. 902; Dunman v. Strother, 1 Tex. 89, 46 Am. Dec. 97; New York News Publishing Co. v. National Steamship Co., 148 N. Y. 39, 42 N. E. 514. An agreement to receive a certain article in payment or in part payment is presumed to be in the interest of the buyer who is to make the payment. The money value is fixed for the purpose of removing uncertainty and to avoid controversy. Nor could the seller, in a suit against the buyer for breach of the agreement to pay, get a larger judgment than the agreed price by proving that the first shovel was worth more than the sum for which it was to be received. In a suit therefore by the Vulcan Company against Roquemore for breach of the contract in failing to pay the agreed price, the sum agreed on, for which the first shovel was to be received as part payment on the contract price of the second shovel, would be binding on both parties.

We see no reason why the agreed value of the first shovel is not equally binding on both parties in a suit for breach of the contract by the buyer, Roquemore, against the seller, the Vulcan Company. For the purpose of payment, it was agreed that it should be delivered and received for a fixed sum, and this agreement was reduced to writing. There is no ambiguity or uncertainty as to this part of the agreement. In an action by either party for breach of the contract, the first shovel should stand for the agreed amount, no more and no less. The agreement plainly says it was to be received in payment of the balance due for the second shovel after the cash payment of $1,500 was made. To permit proof that it was agreed that something else, some supposed damage which Roquemore had suffered, was to be also

regarded as a part of the proposed payment, would be to change the written contract. The first shovel was to be used in paying the entire balance, $4,750, by the terms of the writing. To permit proof that the balance was to be paid in part in a totally different way, thereby changing the agreed value of the first shovel as a means of payment, would be to change the written contract by parol evidence. In Brady v. Oastler, 3 H. & C. 112, the action was for breach of contract to deliver certain goods within the time fixed by a written contract, and the plaintiff offered parol evidence to prove, as an element for the consideration of the jury in estimating the damages, that the price fixed in the contract was above the market price, and that he agreed to pay this extra price because of the short time allowed for delivery; but the evidence was rejected. The reasoning of Pollock, C. B. (page 128) is very persuasive of the correctness of the rule announced. He concludes with the observation:

"The buyer of goods under a general contract for the sale of them, with or without reference to a particular time of delivery, is entitled to damages with reference to the market price of the goods at the time the contract is broken, and I think he is not entitled to more or to less on account of the manner in which the parties agreed about the price, unless that is disclosed in the contract and made a part of it."

In Brooks v. Hubbard, 3 Conn. 58, 8 Am. Dec. 154, where the writing sued on provided that payment of a fixed sum was to be made in certain cloth at 30 cents a yard, the court held that evidence was inadmissible to prove that the cloth named was not in fact worth 30 cents a yard, and that the sum specified in the note as furnishing the measure of damages was binding on the parties. In Richardson v. Hardwick, 106 U. S. 252, 254, 1 Sup. Ct. 213, 27 L. Ed. 145, in rejecting evidence that tended to vary the terms of a written contract as to the mode of payment, the court said:

"But evidence to establish this understanding is clearly inadmissible. In respect to this matter the contract is free from ambiguity. Its plain meaning is that Richardson was to make payment directly to Hardwick, in money, of one-half the amount paid by the latter on the lands. It is therefore not competent to show by parol that payment was to be made in some other way than that specified in the written instrument."

There are other cases pointing towards the same conclusion. Baum v. Lynn, 72 Miss. 932, 18 South. 428, 30 L. R. A. 441; Hubbard v. Marshall, 50 Wis. 322, 6 N. W. 497; Johnson v. St. Louis, I. M. & S. Railway, 141 U. S. 602, 611, 612, 12 Sup. Ct. 124, 35 L. Ed. 875.

We do not think the concluding lines of the contract should change our conclusion. There is ambiguity or incompleteness in the sentence with which the contract ends:

"Upon your acceptance of this proposition it is to be and constitute a mutual cancellation of all obligations between said parties to this date."

But it throws no doubt on the agreement as to the purchase price of the second shovel, nor as to the mode of its payment; nor does it make it in any way doubtful that it has been agreed that the first shovel shall be received as part payment at a fixed price. If this were a suit involving one or more of the mutual obligations referred to, it is possible that parol evidence might be received. The lines

merely show that "mutual obligations" or controversies or claims existing prior to and at the time of the making of the contract are annulled. The contract, in its plain unambiguous terms, remains unchanged. Whatever claims one party to the contract may have had against the other are released and canceled in consideration of the making of the contract. To make the release of any one of such claims, if they exist, form a part of the payment of the price of the second shovel, would be to contradict the agreement, which plainly says how such payment is to be made and excludes the idea that the "mutual obligations" referred to are to constitute part of the payment.

It was not attempted in the trial below to vary or change the price of $6,250 placed by the contract on the second shovel. On the contrary, that price was used as a basis on which to estimate the damages; and yet that price is made up, for the purpose of its payment, by the $1,500 cash payment and the agreement to take the first shovel for the balance, $4,750. It is plain that, if the agreed value of the first shovel be reduced to $1,500, it would reduce the price of the second shovel to $3,000, for its price was to be $1,500 in cash and the delivery to the sellers of the first shovel.

The rule for estimating the damages contended for by the defendant in error would lead to results that show it to be erroneous.

Under the general rule that the measure of damages is the difference between the agreed price and the market value, the plaintiff gets more damages if his contract is a good one— one advantageous to him —for a breach of it than he would get if the contract was not a good one for him. If, for example, a contract was worth $1,000 in profit to the plaintiff, he having bought that much below the market price, he could recover that sum; if, on the other hand, it was worth only $500, he having bought only that much below the market price, he could only recover that much. The better the contract for the plaintiff, the more he would recover for its breach. Under the rule to which exception has been taken, the worse the contract made is for the plaintiff—that is, the larger price he has agreed to pay for the property bought—the greater his damages would become for the breach of it. He agreed to pay $6,250 for the property. That sum is made the basis of his damages for the breach. Deducting the $1,500 he was to pay in cash, but did not pay, and the proved value of the first shovel which was to be part of the payment, and which he did not deliver to the seller, he is allowed to recover the balance of the agreed price, $6,250, as damages. If, according to this rule, he had agreed to pay $62,500 for the second shovel—a sum probably ten times its market value—his damages would have been ten times as large, if the rule asserted is sound. This cannot be true, as matter of fact, for, if he agreed to pay a sum greatly in excess of the value, he loses nothing by the breach and abandonment of the contract.

For the errors indicated, the judgment must be reversed, and the cause remanded for a new trial.