## GAUNT v. RALSTON PURINA CO.

(Circuit Court of Appeals, Eighth Circuit. May 14, 1912.)

No. 3,673.

1. SALES (§ 32*)—CONTRACT—OFFER AND ACCEPTANCE.
   That letters containing an offer and acceptance of grain to be delivered in St. Louis referred in different terms to the inspection which should govern did not prevent them from constituting a contract of sale, where it appeared that there was but one official inspection at St. Louis which was accepted by both parties without question so far as deliveries were made and was clearly the one meant and understood by both.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 59; Dec. Dig. § 32.*]

2. SALES (§ 418*)—BREACH OF CONTRACT BY SELLER—MEASURE OF DAMAGES.
   The measure of damages for breach by the seller of a contract for the sale of grain to be delivered at a certain place is the difference between the contract price and the market price of the same quality of grain at the place of delivery at the time of the breach, if there was a market price at such time and place, and, if not, the difference between the contract price and what it cost the buyer to procure the grain delivered there from the most accessible market, where it used reasonable diligence.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

3. SALES (§ 416*)—ACTION FOR BREACH OF CONTRACT BY SELLER—EVIDENCE.
   In an action for a breach by the seller of a contract for the sale and delivery of Kaffir corn, letters written by plaintiff, after the breach, inquiring the market price of such corn at different markets, were admissible to show the diligence used by plaintiff to obtain the corn as soon as possible after the breach.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1171, 1172; Dec. Dig. § 416.*]

In Error to the Circuit Court of the United States for the District of Kansas.

Action at law by the Ralston Purina Company against C. B. Gaunt. Judgment for plaintiff, and defendant brings error. Affirmed.

A. J. Adams and T. W. Sargent, for plaintiff in error.

J. D. Houston, C. H. Brooks, and Abbott, Edwards & Wilson, for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARLAND, Circuit Judge. This is an action by the Ralston Purina Company to recover damages from C. B. Gaunt for breach of two contracts for the sale and delivery of Kaffir corn. The Purina Company recovered a judgment in the court below, and Gaunt has removed the case here by writ of error. The complaint of the Purina Company contained two counts based upon two alleged contracts for the sale of corn, dated November 13 and 17, 1906, respectively. The trial court charged the jury that the telegrams and letters introduced in evidence constituted valid contracts between the parties. This charge was excepted to and is assigned as error.

It appears that the Purina Company sometimes did business under the name of Robinson-Danforth Commission Company, and that Gaunt sometimes did business as C. B. Gaunt Grain Company. The correspondence out of which this case arises was conducted under the names last mentioned.

On November 13, 1906, Gaunt sent the Purina Company the following telegram:

"Wichita, Kansas, Nov. 13, 1906.

"Robinson-Danforth Commission Co., St. Louis, Mo. Offer ten thousand bushels Kaffir corn 75c cwt. St. Louis, December shipment.

"C. B. Gaunt Grain Co."

On the same day the Purina Company replied as follows, by wire:

"11/13/6.

"C. B. Gaunt Grain Co., Wichita, Kansas. Accept ten thousand bushels 3 or better Kaffir corn, 75c cwt. St. Louis, St. Louis weights and grades. December shipment.　　　　Robinson-Danforth Commission Co."

Gaunt also the same day sent the Purina Company the following letter:

"Wichita, Kan., Nov. 13, 1906.

"Robinson-Danforth Com. Co., St. Louis, Mo.—Dear Sir: This confirms our sale to you to-day by wire of car about 10,000 bushels bulk, No. 3 or better white Kaffir corn at 75 per cwt. f. o. b. car, Del. St. Louis, Mo., subject to St. Louis official inspection St. Louis official weights, shipment within Dec. days, via any road. Ry. Off grades to apply on this contract as follows. Billed to St. Louis, Mo. Demand draft with B/L attached. Any exception to any part of the above must be reported at once, otherwise this confirmation to govern settlement.

"Yours very respectfully,　　　The C. B. Gaunt Grain Co., by Gaunt."

To which the Purina Company immediately replied by letter as follows:

"The C. B. Gaunt Grain Co., Wichita, Kansas—Gentlemen: This confirms exchange of wires, resulting in our purchasing from you 10,000 bu. of No. 3 or better White Kaffir corn at 75c per cwt., f. o. b. St. Louis; December shipment. St. Louis Merchants' Exchange weights and grades to govern. We have arranged so that you can extend the time of shipment on these 10,000 bushels into January, if you see fit. Keep us posted on more offerings, and if we can make a trade for you will be only too glad to do so.

"Very truly yours,　　　Robinson-Danforth Com. Co.
"Dictated by W. H. D.—5."

On November 17, 1906, Gaunt sent the Purina Company the following telegram:

"Wichita, Kansas, Nov. 17, 1906.

"Robinson-Danforth Com. Co., St. Louis, Mo.   Offer ten thousand bushels 3 White Kaffir 75 cwt. St. Louis Dec. Jan. shipment.

"C. B. Gaunt Grain Co."

To which the Purina Company immediately replied as follows:

"11./17/6.

"C. B. Gaunt Grain Co., Wichita, Kansas.   Accept ten thousand bushels three or better Kaffir corn, 75c cwt. St. Louis.   St. Louis weights and grades. December shipment.                                   Robinson-Danforth Com. Co."

On November 17th, Gaunt wrote the Purina Company the following letter:

"Wichita, Kansas, Nov. 1906.

"Robinson-Danforth Com. Co., St. Louis, Mo.—Dear Sir: This confirms our sale to you to-day by wire of cars 10,000 bu. bulk, 3 or better White Kaffir corn at 75c per cwt. f. o. b. cars, St. Louis, Mo., subject to St. Louis official inspection St. Louis official weights, shipment within Dec. Jan. days, via any Ry. Off grades to apply on this contract as follows: Billed to St. Louis, Mo. Demand draft with B/L attached. Any exception to any part of the above must be reported at once, otherwise this confirmation to govern settlement.

"Yours very respectfully,    ·    C. B. Gaunt Grain Co., by Gaunt."

To which the Purina Company replied on November 17th, as follows:

"Nov. 17, 1906.

"The C. B. Gaunt Grain Co., Wichita, Kansas—Gentlemen: This confirms our wire, in answer to yours, resulting in our purchasing from you 10,000 bu. of No. 3 or better White Kaffir corn at 75c per cwt., delivered St. Louis. St. Louis Merchants' Exchange weights and grades.   December-January shipment.

"Very truly yours,                 . Robinson-Danforth Com. Co.
"Dictated W. H. D.–5."

[1] In support of the contention that the minds of the parties to the foregoing correspondence did not meet and agree upon the same thing, it is alleged that the acceptance of the offers of Gaunt by the Purina Company specified a grade of corn and referred to a different inspection from that named in the offers of Gaunt. This criticism is highly technical and without merit. Gaunt found no fault with the acceptance, and delivered corn according to the terms of the first contract, including grade and inspection. He claims that he had a right to refuse to deliver more corn for the reason that the Purina Company refused to receive a car of corn which it is claimed under official inspection graded No. 3 according to contract.

It appears in the evidence that there was but one official inspection at St. Louis, and the chief deputy inspector of grain in charge of the St. Louis office testified that there was but one inspection at St. Louis, and this inspection is spoken of as St. Louis Official, Merchants' Exchange, or Missouri State. We are satisfied that both parties understood the offer and acceptance in the same sense, and that the telegrams and letters constituted a valid contract.

[2] There was no error in the admission in evidence of the letter dated April 2, 1907, from the Purina Company to Gaunt. In the reply

thereto, dated April 10, 1907, Gaunt states that he never had expected to terminate the contracts, and he did not absolutely refuse to perform the same until he wrote the letter of April 16, 1907. It also appears from Gaunt's own letters that he gave the shortage of cars as an excuse for nondelivery of the corn. Upon the question of damages, the trial court charged the jury as follows:

"'Now a question you may be called upon to determine in this case is the question as to what the plaintiff was damaged by the withdrawal of the defendant from its contracts in this case, or its repudiation of the contracts. And in that respect I charge you, as follows: The burden of proof is on the plaintiff in this case. These contracts when entered into between the parties were property rights. And as I have said to you, the plaintiff was entitled to receive there in St. Louis this amount of Kaffir corn contracted for. Now, upon the refusal of the defendant to perform its contracts (if you find the defendant did not have the right to repudiate its contract), the damages recoverable by the plaintiff would be the difference between what it was to pay for this Kaffir corn there in St. Louis, under the contract, and what it would cost it to go upon the market and purchase Kaffir corn in like amount and of like character when it received notice on the 18th day of April, 1907, that defendant declined to perform the contract. If it could then go upon the St. Louis market and purchase Kaffir corn to the amount contracted for, something over 16,000 bushels, I believe the evidence shows, that is to say, the plaintiff would in such case be entitled to recover what it was damaged, and its damage would be the difference between what it would have to pay for this Kaffir corn under these contracts and what it would have to pay to have these contracts fulfilled by going upon the market, if there was a market in St. Louis on the 18th day of April, 1907, and fill these contracts. However, if from all the evidence in this case you find that the plaintiff could not on that day go upon the market in St. Louis and buy sufficient to complete these contracts, then it was the duty of the plaintiff to proceed with all reasonable diligence to fill these contracts from whatever source it could fill them and at the most reasonable terms. And in case you find from all the evidence in the case that the contracts could not be filled upon the St. Louis market at that time, the damages for the breach of the contracts would be the difference between what it had agreed to pay for this Kaffir corn and what it would cost the plaintiff to proceed as a reasonably diligent person to buy enough Kaffir corn of the kind mentioned herein, delivered in St. Louis, to meet these contracts. If you find from the greater weight of all the testimony in the case that the plaintiff did proceed with reasonable dispatch and diligence to fill these contracts, and that it expended in so doing the amount of money that it claims to have expended here, if that was the reasonable time and manner in which it should, in your judgment, have fulfilled these contracts, then that would be the amount of the recovery; but the amount expended by the plaintiff in this case in purchasing Kaffir corn to meet these contracts, although you may find it could not fill these contracts on the market in St. Louis, is not necessarily what the plaintiff was damaged; but it is the amount it would have cost in the markets most accessible to this plaintiff to have filled these contracts with the kind of Kaffir corn purchased by it when purchased in a reasonable and diligent manner. That would be what the plaintiff would be entitled to recover in this case in the event you find defendant without cause breached these contracts and the plaintiff is entitled to recover.'"

In so charging the jury the court stated the law correctly. Dana v. Fiedler, 12 N. Y. 40, 62 Am. Dec. 130; Cahen v. Platt, 69 N. Y. 348, 25 Am. Rep. 203; Belden v. Nicolay, 4 E. D. Smith (N. Y.) 14; Kountz v. Kirkpatrick, 72 Pa. 376, 13 Am. Rep. 687; Kingsbury v. Moses, 45 N. H. 222; Crounse v. Fitch, 1 Abb. Dec. (N. Y.) 475; Kerr v. McGuire, 28 N. Y. 446; Id., 28 How. Prac. (N. Y.) 27; Gordon v.

Bowers, 16 Pa. 226; Harris v. Panama R. R. Co., 58 N. Y. 660; Siegbert v. Stiles, 39 Wis. 533; Lawton v. Chase, 108 Mass. 238; Grand Tower Mining Company v. Phillips, 90 U. S. 471, 23 L. Ed. 71; Salmon v. Helena Box Co., 147 Fed. 408, 77 C. C. A. 586; Howard Supply Company v. Wells, 176 Fed. 512, 100 C. C. A. 70; Marsh et al. v. McPherson, 105 U. S. 709, 26 L. Ed. 1139; Vulcan Iron Works v. Roquemore, 175 Fed. 11, 99 C. C. A. 77; 2 Sedgwick on Measure of Damages (8th Ed.) par. 739; Lillard v. Kentucky Distilleries, 134 Fed. 168, 67 C. C. A. 74; McFadden v. Henderson, 128 Ala. 221, 29 South. 640.

[3] There was no error in admitting in evidence the letters which were in answer to inquiries of the Purina Company as to the market price at different places of Kaffir corn and the probability of obtaining the same. These letters were not admitted for the purpose of showing the market value of Kaffir corn, but upon the question of the diligence used by the Purina Company to obtain corn as soon as possible after the breach of the contract by Gaunt.

In this connection, it will be proper to refer to a clause in rule 11 (188 Fed. ix) of this court, which is as follows:

"When the error alleged is as to the admission or the rejection of evidence the assignment of error shall quote the full substance of the evidence admitted or rejected."

In many of the assignments of error appearing in the record the evidence is not quoted, nor is any reference made as to where it may be found, and the letters to which objection is made are not quoted and they do not seem to appear in the record at all.

Following assignment of error No. 41 as it appears in the record and also in brief of counsel for Gaunt, there appears a statement of the exceptions taken to the instructions of the court. In the record and also in the brief, the last sentence of this statement is as follows:

"The defense further objects and excepts to the refusal of the court to give each of the instructions asked by the defendant."

This last sentence nowhere appears in the bill of exceptions, and it does not appear in the record certified by the judge that any exceptions whatever were taken to the refusal of the court to charge as requested by counsel for Gaunt. Therefore we cannot consider any assignment of errors based thereon.

We have carefully considered the assignments of error which are based upon any proper exception and are not in direct violation of rule 11 hereinbefore mentioned. From this consideration we have found no error, and therefore the judgment of the trial court must be affirmed, and it is so ordered.